Moyer P. Hendrix v. Commissioner. Office Communications Company, Inc. v. Commissioner.
Hendrix v. Commissioner
Docket Nos. 3284-67, 750-69, 751-69, 3513-69.
United States Tax Court
T.C. Memo 1972-29; 1972 Tax Ct. Memo LEXIS 227; 31 T.C.M. (CCH) 105; T.C.M. (RIA) 72029; February 7, 1972, Filed. *227 For the years 1959 through 1964, inclusive, respondent has determined income tax deficiencies and additions to tax under section 6653(b) in regard to petitioners Moyer P. Hendrix and Office Communications Company, Inc. For the year 1965, respondent has determined a deficiency in petitioner Hendrix' income taxes arising from a withdrawal he made from Office Communications Company, Inc. Held, for the years 1959 through 1964, inclusive, petitioners understated their taxable income; the deficiencies for these years were due to fraud with the intent to evade income taxes; and the assessment of these deficiencies for these years was not barred by the statute of limitations. Held, further, that respondent correctly determined that a withdrawal made by Hendrix from Office Communications Company, Inc., in 1965 was a taxable dividend. Moyer P. Hendrix, pro se, 1700 W. First St., Winston-Salem, N. C. Steve C. Hrowitz, for the respondent. 106 IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: These are cases for redetermination of *229 income tax deficiencies and additions to tax pursuant to section 6653(b) [1] of the Internal Revenue Code of 1954, as follows: Additions to
Tax
Docket
Under
No.
Year
Deficiencies
Section 6653(b)
3284-67
Moyer P. Hendrix
1960
$4,233.52
$2,116.76
750-69
Office Communications Company,
1959
1,791.83
895.92
Inc.
1960
1,411.66
705.83
1961
2,368.49
1,184.25
1962
2,108.31
1,054.16
1963
1,988.94
994.47
1964
1,500.42
750.21
751-69
Moyer P. Hendrix
1959
4,863.63
2,431.82
1961
8,067.62
4,033.81
1962
7,118.50
3,559.25
1963
2,976.88
1,488.44
1964
5,075.86
2,537.93
3513-69
Moyer P. Hendrix
1965
524.97
0
The questions presented are: (1) did the petitioners understate their income for the taxable period; (2) was any part of the deficiencies for the taxable period due to fraud with the intent to evade taxes; (3) was assessment of the deficiencies for the taxable period barred by the statute of limitations; and (4) did petitioner Moyer P. Hendrix *230 receive dividend income in the amount of $1,648.80 from Office Communications Company, Inc., in taxable year 1965? Findings of Fact Many of the facts have been stipulated by the parties. These facts, along with the exhibits attached thereto, are incorporated herein by this reference. Moyer P. Hendrix is an individual (hereinafter called Hendrix or petitioner) with his principal place of residence at 1700 West First Street, Winston-Salem, N. C. Hendrix filed his individual income tax returns for the taxable years 1959, 1960, 1961, 1962, 1963, 1964 and 1965 with the district director of internal revenue, Greensboro, N. C. In May 1942, Hendrix was elected to Phi Beta Kappa scholastic honor society and was awarded a Bachelor of Science degree from the School of Commerce at the University of North Carolina on June 1, 1943. During the taxable years 1959 to 1965, inclusive, petitioner, a certified public accountant, was engaged in the practice of accounting as a sole proprietor. Petitioner's practice included the preparation of individual and corporate income tax returns. Petitioner's practice also included the reconciliation of approximately 75 bank statements per month. Hendrix *231 prepared his own income tax returns for each of the taxable years 1959 through 1965, computing his taxable income on the cash receipts and disbursements method of accounting. During the taxable years involved, Hendrix maintained his own books and records. Deposits were made by mail accompanied by a duplicate deposit slip. The bank would validate the duplicate deposit slip and return it to Hendrix. Hendrix accumulated these duplicate deposit slips and, at the time he prepared his income tax returns, he determined his gross receipts by reference to the duplicate deposit slips. Hendrix did not reconcile his personal bank account. During the taxable years 1959 to 1964, inclusive, Hendrix maintained a personal checking account at the Wachovia Bank and Trust Company, Winston-Salem, N. C. Said checking account was the only bank account maintained by Hendrix during the taxable years 1959 to 1964, inclusive. During each of the years involved, Hendrix did not maintain a savings account. The Wachovia checking account was used by Hendrix for the purpose of depositing farm receipts, accounting fees, salary and dividend income. It was also used to make payment of expenses related to his accounting *232 practice, farm business and personal items. During the taxable years 1959 to 1965, inclusive, Hendrix was president and sole stockholder of the corporate petitioner, Office 107 Communications Company, Inc. (hereafter "Communications"), a North Carolina corporation, engaged in the telephone answering service business. The corporate petitioner's offices were in Winston-Salem, N. C., IN THE SAME BUILDING WHERE Hendrix conducted his accounting practice. During said period, corporate petitioner's entire taxable income was derived from this business. Communications filed its Federal corporation income tax returns for the taxable years 1959, 1960, 1961, 1962, 1963, and 1964 with the district director of internal revenue, Greensboro, N. C. During the taxable years 1959 to 1964, inclusive, Communications maintained a checking account at the North Carolina National Bank (formerly The First National Bank), Winston-Salem, N. C. Said checking account was the only bank account maintained by Communications during the taxable years 1959 to 1964, inclusive, and was used exclusively for corporate receipts and disbursements. During the taxable years 1962 to 1964, inclusive, Communications' *233 books and records, to wit: the cash receipts and disbursements journal and the payroll journal, were maintained by Hendrix and other employees under the control of Hendrix. Communications general ledger was maintained exclusively by Hendrix. Communications' books and records were maintained on the accrual method of accounting and its income tax returns compiled on the accrual basis. Communications' income tax returns for each of the taxable years 1959 to 1964, inclusive, were prepared by Hendrix. Statutory notices of deficiency were mailed to Hendrix alleging deficiencies in his income taxes for the taxable years 1959 to 1965, inclusive, and additions to the tax pursuant to section 6653(b) for the taxable years 1959 to 1964, inclusive, as follows: Date Statutory
Notice Mailed
Years Involved
4- 7-67
1960
12-20-68
1959, 1961 to
1964, inclusive
4-14-69
1965
Beginning in the taxable year 1962, and during the subsequent years in question, petitioner and his brother, Paul H. Hendrix, operated as a partnership a farm principally engaged in raising beef cattle for resale. Respondent's determination of petitioners' tax liabilities was based upon a joint investigation *234 conducted by a revenue agent and a special agent. The investigation was initiated on September 17, 1965. During his initial investigation, the revenue agent determined that Communications had understated its gross income by $6,000 in each of the taxable years 1962 to 1964, inclusive, by understating the ending balances in account #301, "Telephone Answering Income." To balance the general ledger in each of the years, Communications overstated the balances in account #201, "Notes Payable" by the same $6,000. When confronted with the revenue agent's findings, Hendrix admitted that Communications had understated its gross income by $6,000 in each of the taxable years 1962 to 1964, inclusive, and that Communications should have paid taxes thereon. During the course of the examination by the revenue agent, Hendrix admitted that he claimed indentical deductions on the income tax returns of both himself and Communications for rent expense, telephone expense and office supplies expense in each of the taxable years 1962 to 1964, inclusive. The petitioners failed to submit for examination by respondent's agents complete books and records of their income-producing activities for each of the *235 taxable years 1959 to 1961, inclusive. At trial Hendrix stated that they had been inadvertently removed from storage by either cleaning personnel or a client. However, the petitioners did submit for examination the following books and records: Pertaining to Moyer P. Hendrix: (a) Retained copies of Forms 1065, United States Partnership Income Tax Returns for the taxable years 1962, 1963, and 1964. (b) Certain duplicate deposit tickets for the taxable years 1963 and 1964. (c) Cancelled checks for other than personal and nondeductible items for the taxable years 1962, 1963, and 1964. (d) Certain work papers for the taxable years 1962, 1963, and 1964. Pertaining to Office Communications Company, Inc.: (a) General ledgers, cash receipts and disbursements journals and payroll journals for the taxable years 1962, 1963, and 1964. (b) Cancelled checks and bank statements, North Carolina National Bank, from January 1962 through January 1965. (c) Sales recapitulation sheets from January 1962 through December 1964 with the exception of June and July 1962. (d) Duplicate deposit tickets for 1962 to 1964, inclusive. 108 Because of the lack of books and records for the *236 taxable years 1959 to 1961, and the apparent inaccuracy of the books and records for the taxable years 1962 to 1964, respondent reconstructed the petitioners' income for each of the taxable years 1959 to 1964, inclusive, on the basis of the bank deposits method. In compiling the data used in respondent's bank deposits computations, the agents examined and utilized information disclosed by the following documents obtained from the banks, in addition to the books and records submitted by petitioners: (a) Bank statements on account of Office Communications Company, Inc., with North Carolina National Bank, Winston-Salem, N. C., for the taxable years 1959 to 1961, inclusive. (b) Bank statements on account of Moyer P. Hendrix with Wachovia Bank and Trust Company, Winston-Salem, N.C., for the taxable years 1959 to 1964, inclusive. (c) Deposit tickets representing deposits to the account of Office Communications Company, Inc., with North Carolina National Bank, Winston-Salem, N.C., during the taxable years 1959 to 1964, inclusive. Respondent stipulated that he did not obtain copies of all of corporate petitioner's deposit slips in this taxable period. (d) Deposit tickets representing *237 deposits to the account of Moyer P. Hendrix with Wachovia Bank and Trust Company, Winston-Salem, N.C., during the taxable years 1959 to 1964, inclusive. (e) Cancelled checks of Moyer P. Hendrix drawn on account at Wachovia Bank and Trust Company, Winston-Salem, N.C. Moyer P. Hendrix - Bank Deposits Reconstruction of Taxable Income From Hendrix' bank statements respondent determined that during the taxable years 1959 to 1964, inclusive, Hendrix made deposits to his personal checking account in the total amounts as set forth in the following schedule: Year
Amount
1959
$ 29,736.78
1960
24,482.73
1961
104,363.62
1962
40,922.34
1963
40,177.21
1964
36,218.39 In each of the years under scrutiny the total amount deposited by Hendrix represented the starting point for respondent's bank deposits computation. The following are items utilized in respondent's bank deposits computation to determine Hendrix' actual "total receipts" in the taxable period: (1) During the taxable years 1959 to 1964, inclusive, the following amounts were withheld from petitioner's salary as president of Office Communications Company, Inc., for Federal income taxes: 1959
$ 1,063.40
1960
981.60
1961
818.00
1962
818.00
1963
818.00
1964
672.40
*238 (2) During the taxable years 1959 to 1964, inclusive, the following amounts were withheld from petitioner's salary as president of Office Communications Company, Inc., for Social Security taxes: 1959
$120
1960
144
1961
144
1962
150
1963
174
1964
174
(3) During the taxable years 1960 to 1964, inclusive, the following amounts were withheld from petitioner's salary as president of Office Communications Company, Inc., for state income tax: 1960
$171.00
1961
142.50
1962
142.50
1963
142.50
1964
142.50
(4) During the taxable years 1959 to 1964, inclusive, petitioner was treated as receiving the following amounts as interest earned on dividends left on deposit with Massachusetts Mutual Life Insurance Company. The stated amounts were not deposited by petitioner to his personal checking account during each of the taxable years 1959 to 1964, inclusive: 1959
$19.67
1960
27.67
1961
36.59
1962
49.05
1963
65.72
1964
79.86
(5) On or about September 5, 1962, Office Communications Company, Inc., issued a check in the sum of $1,000 to Paul H. Hendrix and this amount represented net salary and dividend to Moyer P. Hendrix *239 which was paid over to his brother, Paul. (6) On June 13, 1963, Office Communications Company, Inc., issued check #4892 in the amount of $787.89 payable to American Photocopy Equipment Company for 109 the purchase of office equipment which was personally used by Hendrix in his accounting practice. (7) On or about November 18, 1964, Office Communications Company, Inc., issued a check in the amount of $250 to Hendrix which he did not deposit in his personal checking account. This item represents an undeposited dividend check. (8) During the taxable years 1959 to 1964, inclusive, Office Communications Company, Inc., paid miscellaneous personal expenses of petitioner, viz, office supplies, telephone and rent, in the amounts as set forth in the following schedule: 1959
$ 489.26
1960
521.40
1961
856.39
1962
1,412.64
1963
1,080.48
1964
1,361.96 The above-stated amounts are duplicated deductions claimed by Hendrix on the income tax returns of both himself and Communications for rent, telephone, and office supplies, in each of the taxable years 1959 to 1964 inclusive. (9) During the taxable years 1962 to 1964, inclusive, petitioner had amounts withheld *240 by the Canadian government for Canadian income taxes on gross dividends derived from a Canadian company (converted to American dollars at the prevailing exchange rate) as follows: 1962
$29.60
1963
31.50
1964
26.37
After total receipts in each year were computed, Hendrix was given credit for various nonincome items. As a result, during the taxable years 1959 to 1964, inclusive, petitioner's gross income was as follows: 1959
$25,951.13
1960
25,585.20
1961
32,135.03
1962
36,558.36
1963
31,115.94
1964
36,105.85
The gross income figure was then reduced in each year by "deductions for adjusted gross income" and then by either the standard deduction or itemized deductions and allowable exemptions to obtain the correct amount of taxable income. Petitioner's corrected taxable income, taxable income reported, and understatement of taxable income for each of the taxable years 1959 to 1964, inclusive, are as follows: Corrected
Taxable Income
Understatement of
Year
Taxable Income
Reported
Taxable Income
1959
$21,710.79
$11,251.31
$ 10,459.48
1960
20,901.22
12,112.77
8,788.45
1961
27,841.10
12,161.23
15,679.87
1962
22,728.00
6,552.11
16,175.89
1963
13,650.02
4,963.78
8,686.24
1964
20,158.70
6,891.71
13,266.99
*241 It was stipulated that petitioner did not report the receipt of professional fees from his accounting practice on his income tax returns for the taxable years 1963 and 1964 as follows: 1963
$2,790
1964
2,575
Petitioner did not report the receipt of cash withdrawals from Office Communications Company, Inc., on his income tax returns for each of the taxable years 1959 to 1965, inclusive, as follows: 1959
$ 6,672.66
1960
2,818.00
1961
9,460.89
1962
7,568.14
1963
4,125.77
1964
8,600.86
1965
3,834.80
During each of the taxable years 1959 to 1964, inclusive, petitioner did not receive any gifts, inheritances, legacies, or devises. At the beginning of each of the taxable years 1959 to 1964, inclusive, petitioner did not have substantial amounts of cash on hand and, in any event, it would not have exceeded $100. On September 6, 1967, at Greensboro, N.C., the grand jury returned a three-count indictment in the United States District Court for the Middle District of North Carolina, charging petitioner with attempting to evade or defeat income taxes by filing false returns for the taxable years 1962, 1963, and 1964 in violation of section 7201 of the Internal Revenue Code *242 of 1954. Petitioner, on December 29, 1967, entered a plea of nolo contendere to the charge set forth against him in count one (year 1962) of said indictment. On December 29, 1967, the United States District Court for the Middle District of 110 North Carolina found petitioner guilty and entered its judgment of conviction against petitioner for year 1962. Office Communications - Bank Deposits Reconstruction of Taxable Income During the taxable years 1959 to 1964, inclusive, Communications made deposits to its checking account maintained at North Carolina National Bank, Winston-Salem, N.C., in the total amounts as set forth in the following schedule: 1959
$31,447.30
1960
34,484.08
1961
38,948.34
1962
40,266.57
1963
39,389.25
1964
40,057.38 These figures were derived from Communications' bank statements and were the starting point for the second bank deposits computation of respondent. Set forth in the following schedule is a summary of the accounts receivable account reflecting the balances as of December 31, the bad debts charged off, and the net increases and decreases in the accounts receivable as reported by Communications on its income tax *243 returns for each of the taxable years 1958 to 1964, inclusive: 1958
1959
1960
1961
Accounts Receivable - Dec. 31st
$3,743.38
$3,017.05
$1,187.79
$1,195.91
Add: Bad debts charged off
390.70
442.70
238.20
$3,407.75
$1,630.49
$1,434.11
Less: Accounts Receivable - Jan.
3,743.38
3,017.05
1,187.79
1st
Net Increase (Decrease) in
($ 335.63)
($1,386.56
[$ 246.32)
Accounts Receivable
1962
1963
1964
Accounts Receivable - Dec. 31st
$1,543.40
$2,643.71
$3,452.06
Add: Bad debts charged off
323.55
0
143.00
$1,866.95
$2,643.71
$3,595.06
Less: Accounts Receivable - Jan.
1,195.91
1,543.40
2,643.71
1st
Net Increase (Decrease) in
($ 671.04)
($1,100.31)
($ 951.35)
Accounts Receivable These figures were incorporated in respondent's determination of corrected gross income for Communications during the taxable period. Among other unreported taxable income items, Communications earned and received the sum of $378.27 in 1960, which was not deposited by the corporate petitioner to its checking account until 1961. The item constituted nontaxable income to the corporate petitioner in 1961. For the *244 taxable years 1962 and 1963, the corporate petitioner had earned income in the amounts of $45 and $122.90, respectively, which was not entered on its books and records but which was deposited directly to the personal checking account of petitioner, its president and sole stockholder. Accordingly, Communications understated its gross and taxable income by $45 and $122.90 in each of the taxable years 1962 and 1963. Communications' corrected gross receipts in each year were then reduced to reflect nonincome items. During the taxable years 1959 to 1964, inclusive, Communications' gross income was as follows: 1959
$ 30,171.74
1960
33,242.10
1961
38,317.09
1962
40,166.20
1963
40,140.21
1964
39,893.52
During each of the taxable years 1959 to 1964, inclusive, the corporate petitioner incurred and paid allowable business expenses as follows: 1959
$23,804.41
1960
28,536.56
1961
30,422.13
1962
33,138.51
1963
33,510.40
1964
33,073.42 These expenses were then subtracted from the gross income figure to show corrected taxable income. Communications' corrected taxable income, taxable income reported on its return, and the understatement *245 of taxable income, for each of the taxable years 1959 to 1964, inclusive, are as follows: 111 Corrected
Taxable Income
Understatement of
Year
Taxable Income
Reported
Taxable Income
1959
$6,367.33
$394.57
$5,972.76
1960
4,705.54
( 94.13)
4,799.67
1961
7,894.96
(265.21)
8,160.17
1962
7,027.69
(429.95)
7,457.64
1963
6,629.81
(573.57)
7,203.38
1964
6,820.10
(541.86)
7,361.96
For each of the taxable years 1962 to 1964, inclusive, the books and records of the corporate petitioner reflected that it failed to report the receipt of telephone answering service income in the amount of $6,000. Accordingly, Communications understated its gross and taxable income by $6,000 in each of the taxable years 1962 to 1964, inclusive. During each of the taxable years 1959 to 1965, inclusive, the corporate petitioner did not receive any gifts. During each of the taxable years 1959 to 1964, inclusive, corporate petitioner did not receive any nontaxable or excludible income other than the specific items and amounts which were set forth in respondent's bank deposits computation. A summary of the two bank deposits computations of respondent is *246 as follows: MOYER P. HENDRIX
COMPUTATION OF TAXABLE INCOME
BASED ON BANK DEPOSITS
PARTICULARS
1959
1960
1961
Deposits: Wachovia Bank & Trust Company,
$29,736.78
$24,482.73
$104,363.62
Winston-Salem, N.C. (Checking account)
Add: Receipts deposited in subsequent year
Income Not Deposits: Federal income tax
1,063.40
981.60
818.00
withheld
Social security taxes withheld
120.00
144.00
144.00
State income tax withheld
171.00
142.50
Interest left on deposit with Massachusetts
19.67
27.67
36.59
Mutual Life Insurance Co.
Dividend & Salary of Moyer P. Hendrix paid
to Paul H. Hendrix by Office
Communica-tions Co., Inc.
Equipment purchased by corpora-tion on
behalf of Moyer P. Hendrix
Undeposited dividend check
Preferential dividends
489.26
521.40
856.39
Canadian income taxes withheld
Total Receipts
$31,429.11
$26,328.40
$106,361.10
Less: Deposits of previous years' receipts
$31,429.11
$26,328.40
$106,361.10
Loans
5,424.38
74,145.67
$26,004.73
$26,328.40
$ 32,215.43
Receipts from Paul H. Hendrix
664.00
$26,004.73
$25,664.40
$ 32,215.43
Farm partnership receipts deposited
$26,004.73
$25,664.40
$32,215.43
N.S.L.I. Dividends
53.60
79.20
80.40
$25,951.13
$25,585.20
$32,135.03
Miscellaneous nonincome items deposited
$25,951.13
$25,585.20
$32,135.03
Bank charge for foreign currency exchange
Gross Income
$25,951.13
$25,585.20
$32,135.03
Less: Business expenses
2,590.34
2,315.58
2,643.93
$23,360.79
$23,269.62
$29,491.10
Farm loss
$23,360.79
$23,269.62
$29,491.10
Dividend exclusion
50.00
50.00
50.00
Adjusted gross income
$23,310.79
$23,219.62
$29,441.10
Less: Standard deduction
1,000.00
1,000.00
$22,310.79
$23,219.62
$28,441.10
Itemized deductions
1,718.40
$22,310.79
$21,501.22
$28,441.10
Exemption
600.00
600.00
600.00
Taxable Income
$21,710.79
$20,901.22
$27,841.10
Less Taxable Income Reported
11,251.31
12,112.77
12,161.23
Understatement of Taxable Income
$10,459.48
$ 8,788.45
$15,679.87
*247 MOYER P. HENDRIX
COMPUTATION OF TAXABLE INCOME
BASED ON BANK DEPOSITS
PARTICULARS
1962
1963
1964
Deposits: Wachovia Bank & Trust Company,
$40,922.34
$40,177.21
$36,218.39
Winston-Salem, N.C. (Checking account)
Add: Receipts deposited in subsequent year
220.00
525.00
Income Not Deposits: Federal income tax
818.00
818.00
672.40
withheld
Social security taxes withheld
150.00
174.00
174.00
State income tax withheld
142.50
142.50
142.50
Interest left on deposit with Massachusetts
49.05
65.72
79.86
Mutual Life Insurance Co.
Dividend & Salary of Moyer P. Hendrix paid
1,000.00
to Paul H. Hendrix by Office
Communica-tions Co., Inc.
Equipment purchased by corpora-tion on
787.89
behalf of Moyer P. Hendrix
Undeposited dividend check
250.00
Preferential dividends
1,412.64
1,080.48
1,361.96
Canadian income taxes withheld
29.60
31.50
26.37
Total Receipts
$44,524.13
$43,497.30
$39,450.48
Less: Deposits of previous years' receipts
350.00
220.00
$44,174.13
$43,497.30
$39,230.48
Loans
10,000.00
$44,174.13
$33,497.30
$39,230.48
Receipts from Paul H. Hendrix
6,600.00
22.00
2,055.00
$37,574.13
$33,475.30
$37,175.48
Farm partnership receipts deposited
1,596.78
850.45
$37,574.13
$31,878.52
$36,325.03
N.S.L.I. Dividends
$37,574.13
$31,878.52
$36,325.03
Miscellaneous nonincome items deposited
1,005.00
744.93
199.46
$36,569.13
$31,133.59
$36,125.57
Bank charge for foreign currency exchange
10.77
17.65
19.72
Gross Income
$36,558.36
$31,115.94
$36,105.85
Less: Business expenses
2,398.71
2,389.98
2,431.84
$34,159.65
$28,725.96
$33,674.01
Farm loss
5,406.21
10,258.24
9,038.16
$28,753.44
$18,467.72
$24,635.85
Dividend exclusion
50.00
50.00
100.00
Adjusted gross income
$28,703.44
$18,417.72
$24,535.85
Less: Standard deduction
$28,703.44
$18,417.72
$24,535.85
Itemized deductions
5,375.44
4,167.70
3,777.15
$23,328.00
$14,250.02
$20,758.70
Exemption
600.00
600.00
600.00
Taxable Income
$22,728.00
$13,650.02
$20,158.70
Less Taxable Income Reported
6,552.11
4,963.78
6,891.71
Understatement of Taxable Income
$16,175.89
$ 8,686.24
$13,266.99
*248 OFFICE COMMUNICATIONS COMPANY, INC.
COMPUTATION OF TAXABLE INCOME
BASED ON BANK DEPOSITS
PARTICULARS
1959
1960
1961
Deposits: North Carolina National Bank,
$31,447.30
$34,484.08
$38,948.34
Winston-Salem, North Carolina (checking
account)
Add: Accounts Receivable December 31
3,017.05
1,187.79
1,195.91
Bad Debts Charged Off
390.70
442.70
238.20
Receipts Deposited in Subsequent Years
378.27
Receipts Deposited Directly to Checking
Account of Moyer P. Hendrix
$34,855.05
$36,492.84
$40,382.45
Less: Nonincome Redeposits
44.90
214.50
108.00
$34,810.15
$36,278.34
$40,274.45
Accounts Receivable Jan. 1
3,743.38
3,017.05
1,187.79
$31,066.77
$33,261.29
$39,086.66
Refunds to Customers
895.03
19.19
391.30
$30,171.74
$33,242.10
$38,695.36
Deposits of Prior Year's Receipts
378.27
$30,171.74
$33,242.10
$38,317.09
Credits to Expense Items
$30,171.74
$33,242.10
$38,317.09
Credit to Accounts Receivable
$30,171.74
$33,242.10
$38,317.09
Proceeds from Loan Repayment
Gross Income
$30,171.74
$33,242.10
$38,317.09
Less Allowable Business Expenses
23,804.41
28,536.56
30,422.13
Taxable Income
$ 6,367.33
$ 4,705.54
$ 7,894.96
Less Taxable Income Reported
394.57
( 94.13)
( 265.21)
Understatement of Taxable Income
$ 5,972.76
$ 4,799.67
$ 8,160.17
*249 OFFICE COMMUNICATIONS COMPANY, INC.
COMPUTATION OF TAXABLE INCOME
BASED ON BANK DEPOSITS
PARTICULARS
1962
1963
1964
Deposits: North Carolina National Bank,
$40,266.57
$39,389.25
$40,057.38
Winston-Salem, North Carolina (checking
account)
Add: Accounts Receivable December 31
1,543.40
2,643.71
3,452.06
Bad Debts Charged Off
323.55
143.00
Receipts Deposited in Subsequent Years
Receipts Deposited Directly to Checking
45.00
122.90
Account of Moyer P. Hendrix
$42,178.52
$42,155.86
$43,652.44
Less: Nonincome Redeposits
729.70
419.60
94.50
$41,448.82
$41,736.26
$43,557.94
Accounts Receivable Jan. 1
1,195.91
1,543.40
2,643.71
$40,252.91
$40,192.86
$40,914.23
Refunds to Customers
68.85
42.65
10.96
$40,184.06
$40,150.21
$40,903.27
Deposits of Prior Year's Receipts
$40,184.06
$40,150.21
$40,903.27
Credits to Expense Items
17.86
9.75
$40,166.20
$40,150.21
$40,893.52
Credit to Accounts Receivable
10.00
$40,166.20
$40,140.21
$40,893.52
Proceeds from Loan Repayment
1,000.00
Gross Income
$40,166.20
$40,140.21
$39,893.52
Less Allowable Business Expenses
33,138.51
33,510.40
33,073.42
Taxable Income
$ 7,027.69
$ 6,629.81
$ 6,820.10
Less Taxable Income Reported
( 429.95)
( 573.57)
( 541.86)
Understatement of Taxable Income
$ 7,457.64
$ 7,203.38
$ 7,361.96
*250 113 The following percentages of taxable income have been omitted by petitioners during the years in question: Corrected
Taxable Income
Year
Taxable Income
%
Reported
Moyer P. Hendrix:
1959
$ 21,710.79
100
$11,251.31
1960
20,901.22
100
12,112.77
1961
27,841.10
100
12,161.23
1962
22,728.00
100
6,552.11
1963
13,650.02
100
4,963.78
1964
20,158.70
100
6,891.71
$126,989.83
100%
$53,932.91
Office Communications Company, Inc.:
1959
$ 6,367.33
100
$ 394.57
1960
4,705.54
100
( 94.13)
1961
7,894.96
100
( 265.21)
1962
7,027.69
100
( 429.95)
1963
6,629.81
100
( 573.57)
1964
6,820.10
100
( 541.86)
$ 39,445.43
100%
[1,510.15)
Understatement of
Year
%
Taxable Income
%
Moyer P. Hendrix:
1959
51.8
$ 10,459.48
48.2
1960
58
8,788.45
42
1961
43.7
15,679.87
56.3
1962
28.8
16,175.89
71.2
1963
36.4
8,686.24
63.6
1964
34.1
13,266.99
65.9
42.5%
$73,056.92
57.5%
Office Communications Company, Inc.:
1959
6.2
$ 5,972.76
93.8
1960
-2
4,799.67
102
1961
-3.3
8,160.17
103.3
1962
-6.1
7,457.64
106.1
1963
-8.7
7,203.38
108.7
1964
-7.9
7,361.96
107.9
-3.6
$40,955.58
103.8%
*251 For the taxable years 1959 to 1964, inclusive, petitioners failed to keep adequate and complete books and records of their income-producing activities. Opinion For the taxable years 1959 to 1965, petitioner Moyer P. Hendrix was engaged in the practice of accounting, a practice which included the preparation of individual and corporate income tax returns. At this same time, Hendrix was the president and sole stockholder of the corporate petitioner, Office Communications Company, Inc., a duly authorized North Carolina corporation engaged in the telephone answering service business in Winston-Salem, N. C. Hendrix controlled the operation of Communications; he maintained the corporate books and records, prepared Communications' annual income tax returns, executed checks for the company, and made deposits to the company bank account. Respondent has determined that for the taxable years 1959 through 1964, inclusive, Hendrix and Communications understated their income tax liability and that a deficiency is owing from them. In addition, for the same taxable period and with regard to the same deficiencies, respondent has asserted a 50 percent civil fraud penalty against both petitioners. *252 For the taxable year 1965, respondent has determined a deficiency against Hendrix for alleged failure to report a withdrawal from Communications as a taxable dividend to him. Petitioners contest the deficiency and penalty determinations of respondent. Respondent's deficiency determinations carry the presumption of correctness and, therefore, the burden is upon petitioners to prove otherwise. With regard to the 50 percent addition to tax under section 6653(b), respondent clearly has the burden of proof. Section 7454, Code of 1954. The civil fraud penalty can obtain only if respondent proves by clear and convicing evidence that all or a part of the deficiency for each taxable year was due to fraud with the intent to evade income taxes. The presumptive correctness of the deficiency determination does not assist the respondent in his proof of fraud. Oscar G. Joseph, 32 B.T.A. 1192 (1935); Shaw v. Commissioner, 252 F. 2d 681 (C.A. 6, 1958). It is possible for a deficiency to be upheld while at the same time the element of fraud is not found, but this is not one of these cases. Because direct evidence of fraud is seldom extant, respondent must satisfy his *253 burden by setting forth the circumstances surrounding the acts or omissions of the taxpayers. Since mere ignorance or mistake is not evidence of fraud, respondent must turn to 114 factors which, when present, will tend to evidence a fraudulent intent; e. g., the intelligence, business acumen, and level of education of the taxpayer; consistent omissions of income and substantial understatements of income; concealment of income and false records and books; fictitious transactions and unfounded deductions or exemptions, etc. Standing alone, understatements of income do not constitute fraud. However, if such understatements are consistent and substantial, a strong case for the presence of fraud is established in absence of an adequate explanation of the particular circumstances. John Harper, 54 T.C. 1121, 1129 (1970); Schwarzkopf v. Commissioner, 246 F. 2d 731, 734 (C.A. 3, 1957); Holland v. United States, 348 U.S. 121 (1954). Usually, a determination by respondent that all or part of a deficiency is grounded in fraud draws into consideration the statute of limitations. The general three-year statute of limitations found in section 6501(a) *254 will not apply if a false or fraudulent return is filed with the intent to evade tax. In presence of such intent, section 6501(c)(1) provides an unlimited statute of limitation so that respondent is never barred from assessing a deficiency. Also, the general three-year statute is displaced by a six-year statute under section 6501(e)(1)(A) if the taxpayer has omitted from his gross income an amount in excess of 25 percent of the gross income reported on the return. When faced with books and records which do not properly reflect or attempt to reflect actual taxable income, respondent can reconstruct the proper amounts of taxable income by a number of methods, one of which is the bank deposits computation. The bank deposits method hypothecates gross income by adding together the total of all bank deposits made during the taxable years and all expenditures made during these years with cash not deposited in the bank. The amount thus computed is then reduced to reflect nontaxable receipts and duplicated items. The method is often used where taxpayer's records are nonexistent, but is not limited to these situations. Even with the presence of a complete set of records, if the bank deposits *255 method establishes large amounts of unreported income, then such records are inadequate and do not have to be considered accurate. Morris Lipsitz, 21 T.C. 917 (1954), affd. 220 F. 2d 871 (C.A. 4, 1955). The bank deposits method can also be applied to the case at hand, where petitioners' records for some years are nonexistent for whatever reason, and for other years inaccurate and incomplete. John Harper, supra; Holland v. United States, supra.
The bank deposits method presents evidence of omissions from income which the taxpayer can rebut. As with any other determination of deficiency by the respondent, petitioners have the burden of disproving the correctness of the bank deposits determination. Marcello v. Commissioner, 380 F. 2d 494 (C.A. 5, 1967). In order to establish fraud by the bank deposits method, respondent must prove that petitioners had a "likely source" from which the unreported income could have come. Holland v. United States, supra. A mere showing that the taxpayer made bank deposits in excess of reported income without showing a likely source therefor does not contribute to a showing *256 of fraud. Denny York, 24 T.C. 742 (1955). Respondent's determination of petitioners' corrected taxable income by use of the bank deposits method was both necessary and justified in this case. For the years 1959 through 1961, petitioners failed to submit certain books and records for examination by respondent's agents. Hendrix testified at trial that such documents were inadvertently removed from his storage room by cleaning personnel or one of his clients. Hendrix claimed that he stored books and records that were more than three years old. The documents for the remaining years in the taxable period were incomplete and inaccurate. Among the inconsistencies and falsifications found in the submitted documents were omissions of professional fee income by Hendrix; deductions duplicated by both petitioners; withdrawals from Communications which were unaccounted for by Hendrix; and consistent omission of income by Communications over the taxable period achieved by Hendrix' manipulation of Communications' "Telephone Answering Income" and "Notes Payable" accounts. Respondent's agents found large discrepancies between actual and reported taxable income with respect to each petitioner *257 by use of the bank deposits method. This finding negates the veracity of the documents which petitioners did submit for examination. Petitioners have failed to rebut the correctness of the respondent's bank deposits 115 computation. Hendrix attempted to show that certain deposit slips bearing the notation W.S. which respondent has treated as taxable in the bank deposits computation were from nontaxable sources; namely, (1) deposits of cash from nontaxable "personal" transactions between Hendrix and his family; and (2) deposits of loan repayments to Hendrix from Communications in which Hendrix was acting as a conduit to guarantee loans for Communications (such loans allegedly were secured from members of Hendrix' family). The only "proof" in the record of these nontaxable transactions and loans was the vague, general and self-serving testimony of Hendrix and his brothers. The testimony did not particularize any of these purported transactions and loans; no documentation of the transactions was placed in evidence and Hendrix did not proffer the usual documentation of loan transactions (cancelled checks, promissory notes, or devices for securing the loans). This testimony, therefore, *258 can be accorded no weight and in the absence of particulars in the record, respondent's determination of a deficiency must be sustained. Respondent has set forth the facts and circumstances surrounding the acts and omissions of petitioners which in this case satisfy respondent's burden of proving fraudulent intent. The bank deposits calculation clearly shows the consistent and substantial omission of income by the petitioners over the taxable period. This regular pattern of understatement, Hendrix' omitting an average of 57.5 percent of taxable income over the period and Communications' omitting an average of 103.8 percent of taxable income, is strong proof of fraud. The specific items which caused the consistent understatements were the following: (1) Communications' payment of certain expenses of Hendrix and cash withdrawals of Hendrix from the company (both of these items represent taxable dividend income to Hendrix which he did not report over the period; the 1965 withdrawal is the subject of respondent's deficiency notice to Hendrix for 1965), [2] (2) professional fees not reported by Hendrix in 1963 and 1964; (3) duplication of expenses by Hendrix and Communications from 1959 *259 to 1964; and (4) Communications' understatement of taxable income from 1962 to 1964 by Hendrix' manipulation of the company's notes payable and answering service income accounts. In addition, the books and records maintained by Hendrix for himself and his company were nonexistent for three years and inaccurate for the remaining years in question. Finally, Hendrix' intelligence, business experience, and formal education are such that he certainly was aware of the tax law and was cognizant of the fact that he was not keeping accurate records of his income and Communications' income and was, therefore, deliberately attempting to fraudulently reduce his tax liability and the tax liability of Communications. Under section 6501(c)(1), respondent is not barred from assessing the deficiencies and penalties for the taxable years 1959 through 1961, inclusive, *260 since the element of fraud present in those years causes the general statute to be displaced. The cash withdrawals from Communications made by Hendrix from 1959 through 1964 were continued in 1965. Again, these withdrawals are tantamount to taxable dividends to him and for 1965 respondent's deficiency must be upheld in light of Hendrix' failure to rebut the determination of the respondent. Respondent's determination, both as to the deficiencies and the additions to tax, must be sustained in this case. Petitioners have failed to show the inaccuray of the deficiency assessments and respondent has offered clear and convincing proof that the deficiencies for years 1959 through 1964, inclusive, were grounded in fraud. Decisions will be entered for the respondent. 116 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. We are satisfied that respondent's determination that the withdrawals were the equivalent of taxable dividends is correct. Petitioner has not satisfactorily rebutted this determination and a perusal of the bank deposits computation shows that Communications had sufficient earnings and profits from which a dividend could be drawn.↩