Vincent **MARCELLO**, Sadie Marcello et al., Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 23151.

United States Court of Appeals
Fifth Circuit.

June 16, 1967.

Rehearing Denied Aug. 29, 1967.

deQuincy V. Sutton, Meridian, Miss., for petitioners.

Mitchell Rogovin, Asst. Atty. Gen., Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Donald W. Williamson, Jr., Attys., Dept. of Justice, Lester Uretz, Chief Counsel, IRS, Glen E. Hardy, Atty., IRS, Washington, D. C., for respondent.

Before RIVES, COLEMAN and GODBOLD, Circuit Judges.

RIVES, Circuit Judge.

This is the first of four related cases [1] reviewing decisions by the Tax Court holding that various members of the

---

1. Carlos and Jacqueline Marcello et al. v. Commissioner of Internal Revenue, No. 23152; Joseph, Jr. and Anastasia Marcello v. Commissioner of Internal Revenue, No. 23153, 5 Cir., 380 F.2d 499; and Peter J. and Penny V. Marcello v. Commissioner of Internal Revenue, No. 23154, 5 Cir., 380 F.2d 509, are also decided this day.

Marcello family had deficiencies in their income tax for particular years. Vincent and Sadie Marcello concede that it was permissible for the Commissioner of Internal Revenue to use the "bank deposits plus expenditures" method to reconstruct income for the years 1946, 1947, 1949 and 1950, but contend that the method was applied in an unrealistic and impractical manner. The Tax Court held that the method used was a proper and permissible means of reconstructing the taxpayers' income and, further, that the method was not vitiated because the taxpayers at trial successfully showed that the Commissioner's alleged deficiency was too large. The taxpayers contend that certain deductions were improperly disallowed as personal, not business, expenses. They also claim that the Commissioner considered as income several items which the evidence amply shows were not income to the taxpayers. As to these latter two challenges, the Tax Court held for the Commissioner. Finally, the taxpayers make certain contentions as to a net operating loss in 1948 which they urge should be considered in determining the deficiencies for the other years involved. The Tax Court made no specific finding as to the carryover of any loss in 1948 to the other years. After a thorough reading of the material parts of the voluminous record, we affirm as to all issues except the issue involving the loss in 1948.

The pertinent facts are relatively clear. Vincent and Sadie Marcello are husband and wife, residing in Gretna, Louisiana. Vincent owned the Jefferson Music Company. He granted his brother Carlos a power of attorney authorizing Carlos to act as his agent and attorney in the business of Jefferson Music Company (hereafter Jefferson). As compensation for his services, Carlos received one-half of all the profits. Jefferson reported net income for the calendar years 1944 to 1950 on partnership returns. These partnership returns reflect that Vincent and Carlos each received one-half of the net profits.

The Commissioner determined that the books and records of Jefferson were inadequate to verify the correctness of the income and deduction items reported on the partnership returns filed for the years 1946, 1947, 1949 and 1950. He, therefore, resorted to the bank deposits plus expenditures method of redetermining income of Jefferson for these years. Naturally, the redetermination of Jefferson's net profits caused a redetermination of Vincent's distributive shares for the involved years.[2]

■■■ We first focus our attention on the taxpayers' contention that the bank deposit plus expenditures method was misused so as to make it an unreliable means to reflect income. As noted, the Commissioner determined, and the Tax Court found that the books and records of Jefferson were inadequate to verify the correctness of income and deduction items reported on the partnership returns. In such a case, Section 41 of the 1939 Internal Revenue Code permits the Commissioner to compute income in accordance with a method to clearly reflect income.[3] The method used by the Commissioner has previously been accepted by this Court.[4] Once deficiencies are

---

2. In 1946 and 1947, Vincent and Sadie Marcello filed separate federal income tax returns on the community property basis. Each, therefore, reported one-half of Vincent's share of the net profits of Jefferson. In 1949 and 1950, Vincent and Sadie filed joint returns wherein they reported Vincent's distributive share of Jefferson's net profits. The redetermination of the distributive share caused both Vincent's and Sadie's income to be increased by $7,737.67 for 1946 and $1,430.12 for 1947. For the years 1949 and 1950, their joint income increased by $1,941.17 and $1,076.53 for those respective years.

3. See Price v. United States, 5 Cir. 1964, 335 F.2d 671; Merritt v. Commissioner of Internal Revenue, 5 Cir., 1962, 301 F.2d 484.

4. Price v. United States, supra note 3; Reaves v. Commissioner of Internal Revenue, 5 Cir. 1961, 295 F.2d 336; Morrison v. United States, 4 Cir. 1959, 270 F. 2d 1, cert. den., 361 U.S. 894, 80 S.Ct.

shown to exist, the taxpayer has the burden to show that various deposits do not represent income or that disallowed deductions were in fact proper business expenses.[5] The taxpayers were partially successful in carrying their burden. The fact that the Commissioner's determination was not completely correct does not invalidate the method employed.[6] The method was still a proper one. The Commissioner merely erred in some of his choices as to what constituted income and what would not be allowed as deductions.[7] The Tax Court correctly upheld the method of reconstructing Jefferson's income.[8]

■■ The taxpayers make two specific claims in regard to the adjustment of Jefferson's income. First, they contend that certain unidentified checks totaling $4,000.39 for 1946 and $8,200.00 for 1947, drawn on the bank account of Jefferson, were for business expenses. The revenue agent, examining Jefferson's books and records, did propose in his report that the alleged deductions be allowed. The Commissioner, not being bound by this agent's recommendation,[9] disallowed the deductions. The taxpayers introduced no evidence, other than the revenue agent's proposal, to reveal the purpose of these checks. They did not present analyses of check disbursements, cancelled checks, bank statements or testimony concerning the unidentified items. As the Tax Court

notes: "Petitioners had all the leads, books and records, and documentation available to respondent. And they were aware of the difference in the revenue agent's recommendations and the respondent's determination, but failed to introduce any evidence concerning these items." The taxpayers did not carry their burden to show that they were entitled to certain credit against the income determined by the Commissioner.

■ The second contention involves a deposit on July 6, 1947 of $13,500.00, all of which the Commissioner considered as income. The taxpayers urge that $10,500.00 of this deposit was attributable to a loan to Carlos Marcello and, therefore, was not income to Jefferson. The taxpayers introduced into evidence a check claimed to evidence such a loan which did not bear the endorsement of Jefferson Music Company. The check was never identified as a part of that $13,500.00 deposit. The Tax Court found that the taxpayers failed to establish that $10,500.00 of the deposit represented non-income proceeds;[10] and that finding is not clearly erroneous.

The taxpayers attack the Commissioner's determinations that they also received additional income in 1949 and 1950 from unknown sources. For 1949 the additional income was computed by subtracting from $8,327.32 in expenses $7,115.50 in sources of funds. The difference obviously came from some-

196, 4 L.Ed.2d 150. Deposits and cash expenditures are totaled, unless the cash was derived from withdrawals from the bank. Subtracted from this total are proceeds of loans, redeposits and identifiable non-income. The remainder is taxable income, unless shown to be otherwise. The income calculated by this method is compared with the amount noted on the tax return and any excess is considered an understatement of income.

5. Price v. United States, supra note 3; Doll v. Glenn, 6 Cir. 1956, 231 F.2d 186. Cf. Interstate Transit Lines v. Commissioner of Internal Revenue, 1942, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607.

6. Cf. Commissioner of Internal Revenue v. Smith, 5 Cir. 1960, 285 F.2d 91, 95;

Cefalu v. Commissioner of Internal Revenue, 5 Cir. 1960, 276 F.2d 122, 126.

7. See Anderson v. Commissioner of Internal Revenue, 5 Cir. 1957, 250 F.2d 242, cert. den., 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 844. Cf. Price v. United States, supra note 3.

8. We find no arbitrary action upon the part of the Commissioner. Cf. Helvering v. Taylor, 1935, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623.

9. Cf. Blundon v. Commissioner, 32 B.T.A. 285 (1935).

10. The Tax Court had held that certain deposits made in 1946 and 1949 were loans to partners. The record does not support the taxpayers contention that the deposit in 1947 was also a loan.

where. For 1950 the Commissioner held amounts totaling $10,514.88 [11] to be additional income.

■ The Commissioner determined that the likely sources of this unaccounted income were amounts received by the taxpayers from Jefferson and the New Southport Club.[12] These likely sources of income were not negated by the taxpayers. There was no testimony or written evidence to explain the source of funds for these additional income items nor was an attempt made to show a possible non-income source of funds.[13]

■ The taxpayers contend that any net operating loss incurred in 1948 should have been taken into account in determining whether income was understated in the other years involved. The Tax Court did not rule on this claim, holding instead that the taxpayers apparently sought a refund for 1948 which obviously the Tax Court has no jurisdiction to grant. See Section 272(g), Internal Revenue Code of 1939. The Commissioner notes that the taxpayers did not plead a net operating loss. The operating loss resulted after the Tax Court allowed certain depreciation to be taken. Since the pleadings below preceded the Tax Court's decision on the depreciation, no net operating loss could have been pleaded.[14] The Tax Court should make a finding as to the effect of the 1948 loss, if any, on the amount of income taxable in the other years involved.[15]

The Tax Court decision as to the first three issues, not being clearly erroneous, is affirmed. The cause is remanded for further proceedings before the Tax Court and findings as to any loss in 1948 and the effect of any such loss in determining the deficiencies for 1946, 1947, 1949 and 1950.

Affirmed in part; reversed and remanded in part.

11. $4,008.70   Deposits in checking account
    $1,236.25   Living Expenses
    $1,357.35   Investment in New Southport Club
    $3,912.58   Loss (Billionaire Club)

12. Vincent Marcello had an interest in the New Southport Club.

13. The Commissioner noted a loss on the 1950 joint income tax return labeled "Billionaire Club, Gretna, Louisiana, loss $3,912.58." See footnote 11. The Commissioner, asserting that the loss must have had a source, determined that the source was unreported income in the amount of $3,912.58 earned in 1950. The Commissioner implies that the loss is attributable to a lack of success at dice and blackjack tables. In their brief, the taxpayers suggest that the loss resulted from a business venture. The disposition of this phase of the case does not require locating the source of the loss. The issue is decided against the taxpayers because they completely failed to explain the entry on the verified tax return. If there were no deductible loss or if the entry were inadvertently included on the return, the Tax Court would simply have disallowed as a deduction the $3,912.58 and no additional income problem would be confronting us on appeal. The taxpayers did not come forward, however, with an adequate explanation concerning the loss entry. The situation here is not similar to the one facing this Court in Gibbs v. Tomlinson, 5 Cir. 1966, 362 F.2d 394, where there were facts showing that the Commissioner had erred. If the taxpayers' contentions were correct, it would have taken little effort on their part to overcome the presumption of correctness favoring the Commissioner. The taxpayers made no attempt to show that the deficiency assessment as to this matter was arbitrary and wrong. Helvering v. Taylor, 1935, 293 U.S. 507, 513, 55 S.Ct. 287, 79 L.Ed. 623. They did not testify or indicate that the loss had a non-income source or that the loss was attributable to income earned in previous years. Vincent Marcello only stated that the term "Billionaire Club" referred to slot machines owned by Jefferson. Though we would normally frown on using entries on the tax returns to show additional income, in the narrow confines of this case, we find no error in the Tax Court upholding the Commissioner on this point.

14. The pleadings do expressly request, however, that any loss in 1948 be taken into account in determining the deficiencies for 1946, 1947, 1949 and 1950.

15. Section 6214(b), Internal Revenue Code (1954), 26 U.S.C.A. § 6214(b) (1954 Code); Section 272(g), Internal Revenue Code (1939), 26 U.S.C.A. § 272(g) (1939 Code).