WILLIAM P. JOHNSON and EDNA JOHNSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 502-74
United States Tax Court
T.C. Memo 1975-241; 1975 Tax Ct. Memo LEXIS 134; 34 T.C.M. (CCH) 1036; T.C.M. (RIA) 750241; July 21, 1975 Filed William H. Shields, for the petitioners. Gerald W. Hartley, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: The respondent determined deficiencies in petitioners' income tax and additions thereto for the taxable years 1969 and 1970 as follows: Additions to tax Year
Deficiency
6651(a)
6653(a)
1969
$2,503.56
$125.18
1970
$3,017.29
$448.34
272.99
*135 Other items having been settled the issues for decision are: (1) whether petitioners understated their taxable income in the amounts of $10,092.89 and $9,272.24 for 1969 and 1970, respectively, as determined by respondent through the use of the bank deposits and cash expenditures method of reconstructing income; (2) whether petitioners are entitled to a full business expense deduction in 1969 and 1970 for depreciation, interest, and real estate taxes attributable to their business premises in which they also maintained their personal residence and (3) whether petitioners are liable for the additions to tax determined by respondent to be due under section 6651(a), Internal Revenue Code of 1954[1] for failure to file timely their 1970 tax return, and under section 6653(a) for intentional disregard of the rules and regulations of the Code. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated by this reference. Petitioners William P. Johnson (hereinafter *136 petitioner) and Edna Johnson are husband and wife who resided in Lehigh Acres, Florida at the time of filing their petition herein. Petitioners filed their joint income tax return for 1969 with the internal revenue service in Cincinnati, Ohio. Petitioners' 1970 tax return was received on August 19, 1971, by the audit division of the internal revenue service, Cincinnati, Ohio. Attached to this return was an approved application for extension of time (Form 2688) for petitioners to file their 1970 tax return on or before June 15, 1971. Also introduced into evidence were petitioner's federal income tax returns for 1963 and 1965 through 1968. These returns as well as those for 1969 and 1970 show petitioner's business and rental net income to be as follows: Year
Business Income
Rental Income/(Loss)
1963
$ 2,465.94
1965
2,231.39
($ 286.17)
1966
3,754.25
(772.67)
1967
5,767.92
(749.99)
1968
672.60
(164.99)
1969
1,744.42
(176.12)
1970
10,829.25
186.78 In 1965, 1968, and 1969 petitioner would have reported a slight gain, rather than a loss, from his rental property if the non-cash depreciation deduction had been excluded from the calculations. These *137 returns also do not reflect any other substantial sources of income. During the years in issue petitioner operated Penny's Lounge (hereinafter the lounge) in Madeira, Ohio as a sole proprietorship. Petitioner acquired the lounge in 1964. Prior to this petitioner was employed for a short time in 1957 as an automobile salesman, and worked in the restaurant business during the period 1957 to 1963. At first petitioner had one full time employee, but during 1969 and 1970 petitioner and his wife operated the business. Petitioner, however, did incur a cost of labor expense as reflected in his tax returns for both 1969 and 1970. The lounge had a predominately young clientele and served mostly beer and pizza, spaghetti, steaks and fish. The lounge was open daily from ten in the morning to one at night except for 14 days in 1969. Capacity of the lounge was approximately 48 people. The business premises was located in a building that consisted of a basement and two floors. In the basement there was a large walk-in storage box for beer and two furnaces. On the first floor was the kitchen area, the bar, and tables. The second floor had pool tables, a storage room, a bathroom, and a bedroom *138 used by the petitioners. Petitioners also enjoyed the personal use of the other facilities in the premises including the kitchen when the lounge was closed. Petitioner on his 1969 and 1970 tax return claimed the following amounts as business expenses in connection with the building that housed the lounge: 1969
1970
Depreciation
$1,120.00
$1,120.00
Interest
1,897.50
1,861.74
Real estate taxes
349.46
635.40
$3,366.96
$3,617.14 No allocation was made between personal living expenses and business expenses with respect to these items. On June 9, 1971 respondent's agent Terrence F. Ladrigan (hereinafter Ladrigan) sent petitioner a letter initiating a review of his 1969 tax return. Ladrigan first met petitioner on June 21, 1971 when he commenced his audit procedures. At this time Ladrigan had been an internal revenue service agent for two years and he was familiar with the bank deposits and cash expenditures method of reconstructing income. Some of his work was performed at the business premises. Ladrigan reviewed petitioner's records which included petitioner's 1970 tax return. At that time Ladrigan did not know that petitioner had an extension to *139 June 15, 1971 to file his tax return or that this return had not yet been filed. Under normal procedures, if an agent encounters an unfiled return during the course of an audit, he would receive it and have it filed with the respondent. Petitioner's business records were maintained by recording his daily receipts from the various aspects of his business in an account book and then combining them to arrive at annual totals. However, the only account book introduced into evidence was for the year 1964. His records of disbursements were maintained by attaching his cancelled check to the appropriate bill. Records of this type were made available to Ladrigan. Petitioner still maintained some of these records at the time of the trial. After a review of these records, Ladrigan found them inadequate to determine petitioner's business income. The records consisted of net figures with no supporting data. The expense receipts were in one large box and could not be cross checked with petitioner's figures. Ladrigan then reconstructed petitioner's business income by using the bank deposits and cash expenditures method. As a result of this method respondent calculated an understatement of petitioner's *140 taxable income for 1969 and 1970 as follows: 1969
1970
Deposits: Carmargo-Madeira Branch
Fifth Third Bank, Cincinnati, Ohio
$46,186.79 *
$62,630.35 *
Hunter Savings Association
Loveland, Ohio
5,071.32 *
$67,701.67
Currency Expenditures: Business expenses
$20,647.21
$17,380.15
Personal expenses
2,000.00
22,647.21
2,000.00
19,380.15
$68,834.00
$87,081.82
Deduct: Per tax return
Business receipts
$57,369.81 *
$68,784.25 *
Rent receipts
1,320.00 *
550.00 *
Interest income
51.30 *
305.01 *
Proceeds from sale of house
4,670.32
Bank loan
3,500.00 [2]
58,741.11
77,809.58
Understatement of Taxable Income
$10,092.89
$ 9,272.24
Petitioner had no bank accounts other than a checking account at The Fifth Third Bank and a savings account at the Hunter Savings Association as listed above. During 1969 and 1970 petitioner deposited all business receipts from *141 the operation of the lounge into these two accounts except for cash withheld for operating expenses. No loans, gifts, or inheritances were deposited into either of these two accounts. There were no interbank transfers of funds from either of these accounts. No part of the deposits in The Fifth Third Bank for 1969 or 1970 was subsequently withdrawn to pay any of the business expenses paid by currency during 1969 or 1970. The figure for business expenses paid by currency of $20,647.21 and $17,380.15 for 1969 and 1970, respectively, was developed using petitioner's tax returns for those years as a reference. [3] Respondent first computed a figure for total business expenses. [4] This figure was then reduced by non-cash expenditures, including depreciation and auto mileage expenses, [5] business expenses paid by check, as calculated by the respondent, and the amounts claimed on these returns for interest, taxes and licenses. Any question with respect to whether a check represented a business or personal expense was resolved directly with petitioner. *142 The record includes several additional checks issued in 1969 and 1970. Six of them are as follows: Payable To
Amount
Internal Revenue Service
$ 369.76
Internal Revenue Service
33.77
Internal Revenue Service
282.17
The Ohio Department of Liquor
Control
600.00
Robert E. Jacobs, Han. County
Treasurer
676.61
State of Ohio Dept. of Taxation
1,979.63
The figure for personal expenses, $2,000 for both 1969 and 1970, was arrived at after discussions between Ladrigan and petitioner. This figure represents the personal living expenses incurred by petitioner and his wife during each year in issue. Petitioner took a 10 day vacation in Florida in both 1969 and 1970. During 1969 and 1970 petitioner owned a rental property in Loveland, Ohio. The activity with respect to this property was reported on his tax returns for those years, and the rental receipts and depreciation were considered by respondent in his reconstruction of petitioner's income. This property was sold in June, 1970 and, after satisfying the outstanding obligations, petitioner received $4,670.32. In 1964 petitioner purchased two real estate lots from the Lehigh Acres Development Corporation *143 in Lehigh Acres, Florida. The purchase price for these lots was $1,695 each. Petitioner made a small down payment with the balance plus interest payable at the rate of $17 per month. In 1970 petitioner acquired a third lot from Lehigh Acres Construction Corporation. A home was to be built on this lot to be used as petitioner's personal residence. The total cost of the home and land was approximately $26,500. To finance the cost petitioner secured a mortgage for approximately $14,000, received credit of $2,254 for the two lots purchased earlier, and paid the remaining amount, approximately $10,000 in cash. Petitioner also had a safety-deposit box at The Fifth Third Bank. Petitioner, a coin collector for many years, kept his collection and other items in the box. During the course of the audit, the safety-deposit box was inspected and inventoried. This occurred when Ladrigan was not in charge of the audit, and he served merely as a witness. Petitioner was also present when the box was inspected. During the course of the audit Ladrigan explained to petitioner the bank deposits and cash expenditures method of reconstructing income. He also asked petitioner the amount of cash petitioner *144 had in his possession as of January 1, 1969, and tried to explain to him the significance of the question. In August, 1973 petitioner's records for the period April 1, 1969, through December 30, 1971, were examined by an agent for the State of Ohio Department of Taxation. It was determined that petitioner owed an additional $2,593.12 in sales and use taxes based on his business receipts, plus a penalty of $388.97 which petitioner paid. Petitioner was required to collect these funds and remit them periodically to the state. These funds were deposited into his checking account. Petitioner accounted for them separately, neither including them in his income nor claiming a corresponding business expense deduction. Petitioner however, did claim a $761.51 deduction for Ohio sales tax on his 1969 tax return. Respondent does not contest this deduction at this time. Respondent determined that due to the lack of adequate records it was necessary to reconstruct petitioner's taxable income by using the bank deposits and cash expenditures method which resulted in an increase in taxable income for the years in issue; and that petitioner was only entitled to a 75 percent business expense deduction *145 for those expenses attributable to the lounge since petitioner also used the lounge as a personal residence. Respondent further determined that the penalty under section 6651(a) was due since petitioner did not timely file his 1970 tax return and that such failure was not due to reasonable cause, and that the penalty under section 6653(a) was due since part of the asserted underpayment of tax for both 1969 and 1970 was due to negligence or intentional disregard of rules and regulations. OPINION The case at bar presents for our determination whether respondent, through the use of the bank deposits and cash expenditures method, correctly determined petitioner's taxable income for 1969 and 1970; whether petitioner is entitled to a business deduction for all the expenses attributable to his business premises in which he also maintained his personal residence; and whether petitioner is liable for the additions to tax imposed by respondent under sections 6651(a) and 6653(a). A taxpayer is required to keep such books and records as are sufficient to reflect accurately his income. Section 6001; section 1.6001-1 Income Tax Regs. In the absence of such records the respondent, under section *146 446, has broad power to choose and employ a method to reconstruct income. The propriety of the method used in this case, the bank deposits and cash expenditures method, is well established. Marcello v. Commissioner,380 F. 2d 494 (5th Cir. 1967), affirming on this issue a Memorandum Opinion of this Court. Such method presents evidence which can be rebutted; however, as with other deficiencies, petitioner has the burden of disproving respondent's determination. Marcello v. Commissioner,supra.
When internal revenue agent Ladrigan commenced the audit that resulted in the deficiencies in issue, he requested petitioner to provide him with his business records. Such records were made available. After examining them, Ladrigan found that they did not provide him with an adequate reference to review properly petitioner's tax returns. He found many figures in total without underlying, supporting information, including petitioner's disbursement receipts which were loosely collected in a large box. Although petitioner had in his possession records pertaining to the years in issue, he did not present them for this Court's inspection at trial. Petitioner *147 merely introduced into evidence a book in which his records were kept for a year not before the Court as an example of his record keeping. A review of these records indicates that petitioner's records were not appropriately maintained. As a result of petitioner's poor record maintenance, Ladrigan determined to reconstruct petitioner's income using the bank deposits and cash expenditures method. The record reveals that Ladrigan was an experienced agent who had previously employed this method of income reconstruction. Under these circumstances we believe that the respondent was justified in employing this method to review petitioner's tax returns. Using the bank deposits and cash expenditures method, respondent determined that the bank deposits, figures to which petitioner agreed, for 1969 and 1970 were $46,186.79 and $62,630.35, respectively. Respondent assumed that, unless otherwise explained, all of these deposits were attributable to petitioner's lounge business. Petitioner's main explanation is that, by January 1, 1969, his safety-deposit box held his coin collection and other money which amounted to approximately $12,000 to $13,000. During the years in issue these funds were *148 transferred, he contends, into his checking account and were used for personal expenses including the purchase of his Florida home. Petitioner's support for his contention is limited to his uncorroborated testimony. He testified that the coin collection portion of his accumulation began many years ago. By January, 1963 he had accumulated in total at least $4,000 but not more than $8,000. Apparently he contends that the bulk of his cash accumulation was generated from the net profits of his lounge business. Before acquiring the lounge in 1964 petitioner worked as an automobile salesman and operated a restaurant business. Although the record does not reveal the level of petitioner's earnings from these endeavors, it does not appear that either occupation generated a substantial amount of income. We are also bothered by petitioner's vague recollection of the amount of his accumulation as of 1963 as reflected by the wide variance of his estimation. Petitioner began operated the lounge in 1964. His tax returns for these years (except for 1964) are in evidence and they reflect only modest amounts of business income. Petitioner's passbook from the Hunter Savings Association is also *149 in evidence and it shows periodic activity of deposits and withdrawals during the years 1964 through 1968. Under these circumstances we find it difficult to believe that petitioner could have accumulated such a large sum of money from his sources of income. We also cannot help but wonder why petitioner would have accumulated large amounts of money (not including his coin collection) in a safety-deposit box when he had an active savings account which would have generated interest income. Petitioner's testimony is also in conflict with that presented by Ladrigan. During the course of the audit Ladrigan inquired if petitioner had accumulated any funds as of January, 1969 and explained to petitioner the significance of the question. Petitioner did not mention a cash accumulation of the amount now claimed. At the trial petitioner introduced envelopes and other slips of paper which he claims indicated that the safety-deposit box contained large sums of money. Ladrigan, who was present when the box was inspected, did not recall seeing such papers at that time. Petitioner also testified that when the box was inspected there was approximately $1,400 in it. Ladrigan recalled that there *150 was only about $400 in coins and $50 in bills in the safety-deposit box at that time. Respondent calculated the figure for business expenses paid by cash, $20,647.21 and $17,380.15 for 1969 and 1970, respectively, by using the total business expenses as reported on petitioner's tax returns and subtracting those expenses paid by check and the noncash expenses. Respondent also assumed that the expenditures for interest, taxes, and licenses were paid by check. Petitioner has introduced into evidence six checks which he claims were not included in the above calculations and which, if included, will reduce the amount of business expenses paid by cash and consequently reduce the resultant understatement of income. Respondent, on brief, admits that these checks were not available when Ladrigan made his computations. Two of these checks in amounts of $369.76 and $282.17 are payable to respondent and appear to be for withholding taxes attributable to the cost of labor expense as reported on petitioner's 1970 tax return. We believe that these amounts are included in both that expense and respondent's figure for total business expenditures. Since these checks were not considered previously, *151 respondent's figure for business expenditures paid by check should be increased by a total of $651.93 resulting in a corresponding decrease in both the figures for business expenditures paid by cash and the understatement of income. A third check in the amount of $33.77, also payable to respondent, is unexplained. We are unable to determine whether this check was issued for business or personal reasons. Because personal expenditures do not affect the computation of business expenditures paid by cash, petitioner can derive no benefit from the production of this check. Two other checks, one payable to "The Ohio Department of Liquor Control" and the other payable to "Robert E. Jacobs, Han. County Treasurer", are accounted for by respondent's assumption that those expenditures for licenses and taxes were paid by check. The last check written in 1970, payable to "State of Ohio Dept. of Taxation" for $1,979.63, is a remittance of Ohio sales tax and does not appear to be included in respondent's calculations. Petitioner collected sales tax for the state based on his business receipts, and periodically remitted them to the state. Petitioner accounted for these funds separately, not including *152 them in income and not generally taking a corresponding business expense deduction. Respondent's calculations give petitioner credit for his business receipts, as reported on his tax returns, but, under his (petitioner's) method of accounting, the Ohio sales tax is not included in that figure. However, the sales tax funds collected were deposited along with petitioner's other business receipts. This check shows that he did remit $1,979.63 to the state in 1970. Consequently petitioner has explained an additional $1,979.63 of his deposits, and the understatement of taxable income for 1970 should be correspondingly reduced. In 1969 petitioner did include in his business expenses $761.51 of Ohio sales tax. This amount is also accounted for by respondent's assumption that those expenditures for taxes were paid by check. Petitioner has introduced his copies of the sales tax returns he filed with the state during the period October, 1968 through March, 1971. Petitioner has neither attempted to allocate these amounts to the years in issue nor shown that they represent amounts in addition to those for which he has already received credit. Petitioner believes that additional amounts of *153 his deposits can be explained as a result of the audit conducted by the State of Ohio Department of Taxation which determined that petitioner owed an additional $2,593.12 in sales taxes. This audit covered the period April 1, 1969 through December 30, 1971. Petitioner has again failed to allocate this amount to the years in issue. Furthermore, as discussed above petitioner has already received credit for a total of $2,741.14 related to sales tax during the years in issue. This assertion must be denied. Petitioner also introduced 25 other checks issued in 1969 and 1970 which he believes were not previously considered. These checks appear to be for personal expenses (primarily related to the purchase of his Florida residence) which as noted previously have no affect on the calculation of business expenditures paid by cash. Petitioner also introduced a promissory note for $894.46 given in November, 1969 for the purchase of a carpet used at the lounge. The note called for 24 monthly payments of $37.27 each. Petitioner, however, has not shown that these payments were actually made or, if made, that they were paid by check. Furthermore, this represents a capital expenditure which respondent *154 has considered by removing the amount of depreciation from his calculation of the figure for business expenditures paid by cash. Petitioner objects to the $2,000 figure for personal expenses used for both 1969 and 1970. This figure was developed after discussions between Ladrigan and petitioner during the course of the audit, and we believe it is a reasonable figure for two people for a year. Petitioner also believes that he should be given credit for $5,071.32 as proceeds received from the sale of the rental property in 1970. However a record of the transaction clearly shows that petitioner only received $4,670.32, the amount which is included in respondent's calculations. We have found petitioner's testimony to be conflicting and inconsistent with the other evidence in the record. We cannot give his testimony full credence. We have also found that his business records were poorly kept and respondent's use of the bank deposits and cash expenditures method to reconstruct his income to be justified. We believe then that respondent's determination with respect to this issue, subject to the modifications discussed above and the slight adjustments as noted in our findings of fact, *155 must be upheld. Petitioner, on his 1969 and 1970 tax returns, claimed depreciation, interest, and real estate tax expenses attributable to the building enclosing the business premises. Petitioner claimed a total deduction for these items even though he maintained his personal residence there. Respondent determined that petitioner should only be entitled to deduct 75 percent of these expenses, the remaining 25 percent being attributable to petitioner's personal use of the building. This allocation is based upon Ladrigan's personal knowledge of the building and the manner in which it was used. A diagram of the building was introduced into evidence. Petitioner had full use of the second floor bedroom and general use of the other facilities, including the kitchen when the lounge was closed. This allocation is not based on a comparison of floor space as requested by the petitioner. We believe under these circumstances respondent's allocation is reasonable. Respondent's determination with respect to this issue must be upheld. Respondent has determined that petitioner is liable for the penalty imposed by section 6651(a) for the year 1970. We must decide whether petitioner's failure *156 to file timely his 1970 tax return was "due to reasonable cause and not due to willful neglect", within the meaning of this subsection. The burden of proof rests on the petitioner. Electric & Neon, Inc.,56 T.C. 1324, 1342 (1971), affirmed without published opinion, 496 F. 2d 876 (5th Cir. 1974). Ladrigan's review of petitioner's tax return was initiated by the letter sent to petitioner on June 9, 1971. At that point Ladrigan was only concerned with petitioner's 1969 tax return. Although the record is not clear we believe Ladrigan first met petitioner and reviewed his records on June 21, 1971. Among the records reviewed by Ladrigan at this meeting was petitioner's 1970 tax return. However, Ladrigan neither knew, nor had reason to know, that this return had not yet been filed. Ladrigan thought that this was petitioner's copy of the return. The record does not indicate whether the approved application for extension of time to file this return until June 15, 1971, was attached to the return at that time. Ladrigran testified that it is normal procedure for an agent to file a tax return for a taxpayer when an unfiled tax return is encountered during *157 the course of an audit. We have no reason to believe that Ladrigan would not have complied with this procedure. The return was ultimately received by the respondent on August 19, 1971. Petitioner contends that, as a consequence of receiving the June 9, 1971 letter and a subsequent telephone conversation with Ladrigan to establish the June 21, 1971 meeting, he believed that he was required to retain his records including his unfiled 1970 tax return. If this be so we believe that petitioner had, at a minimum, an obligation to inform Ladrigan that his 1970 tax return was not filed. We believe the imposition of the penalty is proper. Respondent has also determined that for 1969 and 1970 petitioner is liable for the penalty imposed by section 6653(a). This penalty is imposed if "any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations." The burden of proof is on the petitioner. Robert L. Bunnel,50 T.C. 837, 843 (1968). When Ladrigan commenced the audit he attempted to use the business records kept by petitioner. These records were found inadequate and Ladrigan was compelled to use another method to review properly *158 petitioner's tax returns. This review led to a finding of an understatement of petitioner's taxable income and the major portion of the deficiency now in issue. Petitioner had been in the restaurant business for a number of years. We believe that he should have been able to maintain adequate and orderly records that would reflect his business activity. At trial petitioner did not present his records for the years in issue although some were available. We believe petitioner has failed to meet his burden and that the penalty is properly imposed. Decision will be entered under Rule 155.
Footnotes
1. All Code references are to the Internal Revenue Code of 1954 as amended unless otherwise indicated.↩
*. Petitioner agrees to the correctness of these figures. ↩
2. Although given credit for this bank loan, petitioner did not borrow any money to finance his business operations in 1969 or 1970.↩
3. Respondent's computations show that this figure for 1969 should be $20,609.44, which is $37.77 lower than the amount shown in the deficiency notice. Respondent states that the lower figure will be "acceptable" if he should prevail in this issue. ↩
4. Respondent's figure for 1969 is understated by $280 and overstated for 1970 by $150 because he did not include the variations in petitioner's inventory during these years. ↩
5. Respondent only reduced by one-half the amount claimed as an auto mileage expense.↩