T.C. Memo. 2011-262

UNITED STATES TAX COURT

KELVIN AND JACQUELINE BURLEY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27528-09.                     Filed November 7, 2011.

Alvaro G. Velez, for petitioners.

Archana Ravindranath, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined deficiencies in, and
an addition under section 6651(a)(1)[1] to, petitioners' Federal
income tax (tax) as follows:

_____

[1]All section references are to the Internal Revenue Code
(Code) in effect for the years at issue.  All Rule references are
to the Tax Court Rules of Practice and Procedure.

| Year | Deficiency | Addition to Tax Under Section 6651(a)(1) |
|------|-----------|------------------------------------------|
| 2005 | $64,646 | $3,158.25 |
| 2006 | 1,855 | -- |
| 2007 | 58,693 | -- |

The issues remaining for decision are:

(1) Do petitioners have unreported income of $100,809.88, $2,637.06, and $5,720.93 for their taxable years 2005, 2006, and 2007, respectively?  We hold that they do.

(2) Are petitioners entitled to deduct certain car and truck expenses of $74,737 for their taxable year 2005 and $72,517.59 for their taxable year 2007 in excess of the deductions for those expenses that respondent allowed for each of those years?  We hold that they are not.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners resided in Ohio at the time they filed the petition.

Since 1987 until at least 2007, petitioner Kelvin Burley (Mr. Burley) was the owner and sole proprietor of a trucking broker business known as Burley Trucking.  At all relevant times, Burley Trucking hauled broken concrete, soil, asphalt, gravel, and other debris for various companies.

During at least 2005, Burley Trucking owned seven or eight trucks.[2]  At all relevant times, Mr. Burley's trucks required repairs on a regular basis as a result of the rough work conditions in which those trucks were operated.

Petitioners did not maintain adequate books and records for Burley Trucking for any of the taxable years at issue.

During at least 2006 and 2007, petitioner Jacqueline Burley (Ms. Burley) provided certain services to Burley Trucking, including occasionally purchasing and picking up certain parts and certain supplies from certain vendors.

At certain times during the years at issue, Dennison Trucking, which was owned and operated by Charles E. Dennison, Jr. (Mr. Dennison), provided certain hauling services as a subcontractor of Burley Trucking.  At certain other times during those years, Mr. Dennison performed certain repairs on some of the trucks that Burley Trucking owned.  In connection with making some of those repairs, Mr. Dennison purchased on behalf of Mr. Burley with cash that Mr. Burley provided to Mr. Dennison certain unidentified parts for certain unidentified costs.  After completing each such purchase on behalf of Mr. Burley, Mr. Dennison gave Mr. Burley a receipt from the vendor.

---

[2]The record does not establish how many trucks Burley Trucking owned during each of the years 2006 and 2007.

During 2005, 2006, and 2007, petitioners maintained the following bank accounts (collectively, petitioners' bank accounts) at the financial institutions indicated:

| Year | Institution | Account No. Ending |
|------|-------------|--------------------|
| 2005 | Hancock Bank | 0823 |
| 2005 | Hancock Bank | 368 |
| 2005-07 | U.S. Bank | 1622 |
| 2005-07 | U.S. Bank | 9039 |
| 2005-07 | U.S. Bank | 6737 |
| 2005-07 | U.S. Bank | 9109 |
| 2005-07 | National City Bank | 7447 |
| 2005-07 | National City Bank | 3396 |
| 2005-07 | National City Bank | 0337 |
| 2007 | National City Bank | 8695 |
| 2007 | National City Bank | 0030 |
| 2007 | National City Bank | 0589 |

On a date in 2005 not established by the record, petitioners deposited a check for $8,170 into an unidentified bank account. That check was an "official check"[3] for $8,170 dated July 8, 2005, which was issued by National City Bank and made payable to Burley Trucking. The front side of that check bore the notation "PERFORMANCE PAVING INC." on the line marked "Remitter".

On August 15, 2005, petitioners withdrew $22,006 from their U.S. Bank account with account number ending 6737. On August 16, 2005, petitioners deposited $22,000 into that same account.

_____

[3]Although it is not altogether clear, it appears that an official check is a cashier's check, certified check, or other similar check issued by a bank.

On October 24, 2005, petitioners (1) withdrew $10,000 from their U.S. Bank account with account number ending 6737 and (2) deposited $10,000 into their U.S. Bank account with account number ending 1622.

On December 15, 2005, petitioners deposited a total of $42,222 into their U.S. Bank account with account number ending 9109.  Of that $42,222 total deposit, $40,000 consisted of a check dated October 20, 2005 (October 20, 2005 check), which was issued by Union National Fire Insurance Co. (Union National Insurance) and made payable to Gretta M. Buckley and Luther Burley.  The front side of that check bore the notation "POLICY NUMBER 7517423175".  The October 20, 2005 check was endorsed on the back by the payees, Gretta M. Buckley and Luther Burley, and reendorsed by Mr. Burley.

Petitioners filed Form 1040, U.S. Individual Income Tax Return, for each of their taxable years 2005 (2005 return), 2006 (2006 return), and 2007 (2007 return).  Petitioners attached to each of the 2005 return, the 2006 return, and the 2007 return Schedule C, Profit or Loss From Business (Schedule C), for Burley Trucking.

In Schedule C that petitioners attached to the 2005 return, Mr. Burley reported "Gross receipts or sales" of $585,042 and deducted, inter alia, "Car and truck expenses" of $283,392.

In Schedule C that petitioners attached to the 2006 return, Mr. Burley reported "Gross receipts or sales" of $520,000 and deducted, inter alia, "Car and truck expenses" of $262,013.50.

In Schedule C that petitioners attached to the 2007 return, Mr. Burley reported "Gross receipts or sales" of $604,379 and deducted, inter alia, "Car and truck expenses" of $228,676.17.

At a time not established by the record, respondent assigned Brian Kimmel (Mr. Kimmel), one of respondent's revenue agents, to examine the respective returns that petitioners had filed for their taxable years 2005, 2006, and 2007 (respondent's examination). As part of that examination, Mr. Kimmel asked petitioners to provide him with all documents that Burley Trucking maintained during each of those years. Mr. Kimmel also asked petitioners to provide him with all bank statements relating to Burley Trucking for each of the years at issue. (We shall refer to Mr. Kimmel's requests for documents and bank statements relating to Burley Trucking as Mr. Kimmel's requests.)

Around October 2008, petitioners hired an accountant, Ralph Krasik (Mr. Krasik), to represent them in connection with respondent's examination. Mr. Kimmel discussed with Mr. Krasik, inter alia, the types of documents and records that Burley Trucking was required under section 6001 to maintain and to provide to respondent.

In response to Mr. Kimmel's requests, petitioners provided Mr. Kimmel with only a limited number of documents consisting of certain bank statements and certain receipts and invoices that were presented to him in a disorganized manner. Petitioners did not provide Mr. Kimmel with any books of account of Burley Trucking, such as general ledgers with respect to each of Burley Trucking's taxable years 2005, 2006, and 2007.

Mr. Kimmel reviewed the limited number of documents provided to him and found those records to be inadequate in order to complete respondent's examination. Consequently, Mr. Kimmel issued summonses on behalf of respondent (respondent's summonses) to the banks at which petitioners had maintained petitioners' bank accounts during each of the years 2005, 2006, and 2007.

Pursuant to respondent's summonses, the banks provided Mr. Kimmel with the respective bank statements for petitioners' bank accounts (petitioners' bank statements). Mr. Kimmel examined those bank statements and prepared a bank deposits analysis for each of petitioners' taxable years 2005, 2006, and 2007 on the basis of that examination (bank deposits analysis). The bank deposits analysis showed for each of those years the amount of each deposit into each of petitioners' bank accounts, the date of each such deposit, and the type of each such deposit (e.g., teller deposit, opening deposit, etc.). In preparing the bank deposits analysis, Mr. Kimmel attempted to ascertain whether any

of the deposits into petitioners' bank accounts during each of the years at issue is nontaxable because, for example, a deposit had been made as a result of a transfer of funds from one of petitioners' bank accounts to another of those accounts. Mr. Kimmel reduced the total deposits during each taxable year at issue by (1) all deposits during each such year that he determined to be nontaxable and (2) all amounts that petitioners had reported in Schedule C as gross receipts in the return that they filed for each such year. Mr. Kimmel determined that the balance of the total deposits during each of the years at issue constitutes unreported Schedule C gross receipts of Burley Trucking for each such year.

Respondent issued to petitioners a notice of deficiency with respect to their taxable years 2005, 2006, and 2007 (notice). In that notice, respondent determined, inter alia, that petitioners have unreported Schedule C gross receipts for their taxable years 2005, 2006, and 2007 of $116,809.88, $22,637.06, and $85,506.55, respectively. In making those determinations, respondent relied on the bank deposits analysis that Mr. Kimmel had prepared. In the notice, respondent also determined to disallow Schedule C car and truck expenses that petitioners claimed for their taxable years 2005, 2006, and 2007 of $157,444.48, $141,381.95, and $103,955.25, respectively.

OPINION

Petitioners bear the burden of proving that the determinations in the notice that remain at issue are erroneous.[4]  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Before turning to the two issues remaining for decision, we shall first evaluate the testimonial evidence on which petitioners rely to support their position with respect to each of those issues.[5]  At trial, petitioners called Mr. Burley, Ms. Burley, Mr. Kimmel, Mr. Dennison, and Anthony Page (Mr. Page) as witnesses.

With respect to the testimony of Mr. Burley, based upon our observation of Mr. Burley at trial, including our observation of his demeanor, we did not find him to be credible.  In addition, we found his testimony to be in certain material respects vague, general, conclusory, self-serving, and/or contradicted by other evidence in the record.

With respect to the testimony of Ms. Burley, we found her testimony to be in certain material respects general, vague, conclusory, and/or self-serving.

---

[4]Petitioners do not claim that the burden of proof shifts to respondent under sec. 7491(a).

[5]Petitioners introduced certain documentary evidence with respect to their claimed car and truck expense deductions (discussed below).  We shall address that evidence when we consider that issue.

With respect to the testimony of Mr. Dennison, we found his testimony to be in certain material respects general, vague, conclusory, and/or serving the interests of his customer, Mr. Burley, who operated Burley Trucking.

With respect to the testimony of Mr. Page, based upon our observation of Mr. Page at trial, including our observation of his demeanor, we did not find him to be credible. In addition, we found his testimony to be in certain material respects general, vague, conclusory, and/or inconsistent.

We shall not rely on the respective testimonies of Mr. Burley, Ms. Burley, Mr. Dennison, and Mr. Page to establish petitioners' position with respect to each of the issues remaining for decision. See, e.g., <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986).

<u>Unreported Schedule C Gross Receipts</u>

In the notice, respondent determined on the basis of the bank deposits analysis that petitioners have unreported Schedule C gross receipts for their taxable years 2005, 2006, and 2007 of $116,809.88, $22,637.06, and $85,506.55, respectively. Taking into account the parties' stipulations and respondent's concessions on brief, the amounts of petitioners' unreported Schedule C

gross receipts for 2005, 2006, and 2007 that remain in dispute are $100,809.88, $2,637.06, and $5,720.93, respectively.[6]

We address initially petitioners' position that respondent's bank deposits analysis for each of the years at issue is inherently flawed and therefore should be disregarded in its entirety. Where a taxpayer has failed to maintain sufficient records under section 6001, as is the case here, the Commissioner of Internal Revenue may rely on the bank deposits method in order to determine the taxpayer's income. Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). Respondent was required in performing respondent's bank deposit analysis to take into account any nontaxable source or deductible expense of which respondent had knowledge. See Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994).

"A bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income." Tokarski v. Commissioner, supra at 77. Petitioners bear the burden of proving that respondent's determinations of income based on the bank deposits method are erroneous. See Clayton v.

---

[6]Petitioners and respondent stipulated that deposits totaling $16,000 and $2,000 for 2005 and 2007, respectively, that respondent had determined in the notice constitute unreported gross receipts are nontaxable transfers. Nonetheless, on brief respondent fails, presumably inadvertently, to reduce the respective amounts of bank deposits at issue for those two years by those stipulated amounts. The correct amounts of deposits that remain in dispute for 2005 and 2007 are $100,809.88 and $5,720.93, respectively, and not $116,809.88 and $7,720.93, respectively, as respondent erroneously asserts on brief.

Commissioner, supra at 645.  Petitioners may satisfy that burden by establishing that the deposits at issue are derived from a nontaxable source.  See Nicholas v. Commissioner, supra at 1064.

In support of petitioners' position that respondent's bank deposits analysis for each of the years at issue is inherently flawed, petitioners argue that, in addition to the deposits during each of the years at issue that the parties stipulated in the stipulation of facts are not taxable, (1) $100,809.88 of deposits during 2005, (2) $2,637.06 of deposits during 2006, and (3) $83,506.55 of deposits during 2007 are not taxable.  Respondent concedes on brief that, in addition to the deposits during each of the years at issue that the parties stipulated are not taxable, deposits totaling $77,785.62 during 2007 are nontaxable. Respondent's concessions in the stipulation of facts and on brief do not invalidate the bank deposits analysis on which respondent relies.  See Marcello v. Commissioner, 380 F.2d 494, 497 (5th Cir. 1967), affg. in part, revg. in part, and remanding T.C. Memo. 1964-302.

It is also significant that during respondent's examination petitioners provided Mr. Kimmel with only a limited number of documents consisting of certain bank statements and certain receipts and invoices that were presented to him in a disorganized manner.  Petitioners did not provide Mr. Kimmel with any books of account of Burley Trucking, such as general ledgers with

respect to each of Burley Trucking's taxable years 2005, 2006, and 2007.

Mr. Kimmel reviewed the limited number of documents provided to him and found those records to be inadequate in order to complete respondent's examination. Consequently, Mr. Kimmel issued summonses on behalf of respondent to the banks at which petitioners had maintained petitioners' bank accounts during each of the years 2005, 2006, and 2007.

Pursuant to respondent's summonses, the banks provided Mr. Kimmel with petitioners' bank statements. Mr. Kimmel examined petitioners' bank statements and prepared the bank deposits analysis for each of the taxpayers' taxable years 2005, 2006, and 2007 on the basis of that examination. The bank deposits analysis showed for each of those years the amount of each deposit into each of petitioners' bank accounts, the date of each such deposit, and the type of each such deposit (e.g., teller deposit, opening deposit, etc.). In preparing the bank deposits analysis, Mr. Kimmel attempted to ascertain whether any of the deposits into petitioners' bank accounts during each of the years at issue is nontaxable because, for example, a deposit had been made as a result of a transfer of funds from one of petitioners' bank accounts to another of those accounts. Mr. Kimmel reduced the total deposits during each taxable year at issue by (1) all deposits during each such year that he determined to be

nontaxable and (2) all amounts that petitioners had reported in Schedule C as gross receipts in the return that they filed for each of the years at issue. Mr. Kimmel determined that the balance of the total deposits during each of the years at issue constitutes unreported Schedule C gross receipts of Burley Trucking for each such year.

Based upon our examination of the entire record before us, we reject petitioners' argument that respondent's bank deposits analysis for each of the years at issue is inherently flawed.

2005

We now consider petitioners' argument that the following deposits that remain at issue for their taxable year 2005 are not taxable: (1) A deposit of $40,000 made on December 15, 2005, into petitioners' U.S. Bank account with account number ending 9109 ($40,000 deposit); (2) a deposit of $8,170 made on a date not established by the record into an unidentified U.S. Bank account ($8,170 deposit); (3) a deposit of $22,000 made on August 16, 2005, into petitioners' U.S. Bank account with account number ending 6737 ($22,000 deposit); and (4) a deposit of $10,000 made on October 24, 2005, into petitioners' U.S. Bank account with account number ending 1622 ($10,000 deposit).[7]

_____

[7]Petitioners make no argument with respect to a total of $20,639.88 of deposits made on various dates during 2005 except that those deposits are not taxable because the bank deposits analysis is inherently flawed. We have rejected that argument.

We turn first to the $40,000 deposit. On December 15, 2005, petitioners deposited a total of $42,222 into their U.S. Bank account with account number ending 9109. Of that $42,222 total deposit, $40,000 consisted of the October 20, 2005 check, which was issued by Union National Insurance and made payable to Gretta M. Buckley and Luther Burley. Petitioners argue that the proceeds of the October 20, 2005 check are not taxable to them because they constituted insurance proceeds, which are generally not taxable to the recipient. In support of that argument, petitioners rely on Mr. Burley's testimony on which we are unwilling to rely. Petitioners also rely on the October 20, 2005 check. The front side of that check bore the notation "POLICY NUMBER 7517423175". The October 20, 2005 check was endorsed on the back by the payees, Gretta M. Buckley and Luther Burley, and reendorsed by Mr. Burley. We are satisfied from the October 20, 2005 check on which petitioners rely that that check represented insurance proceeds that Union National Insurance paid to Gretta M. Buckley and Luther Burley. We are not satisfied from that check that Union National Insurance paid or intended to pay those proceeds to petitioners. On the record before us, we find that petitioners have failed to carry their burden of establishing that the $40,000 deposit is not taxable to them for their taxable year 2005.

We turn next to the $8,170 deposit.  On a date in 2005 not established by the record, petitioners deposited a check for $8,170 into an unidentified bank account.  That check was an "official check" for $8,170 dated July 8, 2005, which was issued by National City Bank and made payable to Burley Trucking (July 8, 2005 check).  Petitioners argue that the proceeds of the July 8, 2005 check are not taxable to them because those proceeds represented a partial repayment of a $25,000 loan that Burley Trucking had made to another business known as Performance Paving, Inc. (Performance Paving).  In support of that argument, petitioners rely on Mr. Burley's testimony on which we are unwilling to rely.  Petitioners also rely on the July 8, 2005 check.  The front side of that check bore the notation "PERFOR-MANCE PAVING INC." on the line marked "Remitter".  We are satis-fied from the July 8, 2005 check on which petitioners rely that that check was a check purchased by Performance Paving and payable to Burley Trucking.  We are not satisfied that the purpose of Performance Paving, a customer of Burley Trucking, in issuing the July 8, 2005 check to Burley Trucking was to make a partial repayment of an alleged loan to Burley Trucking.  On the record before us, we find that petitioners have failed to carry their burden of establishing that the $8,170 deposit is not taxable to them for their taxable year 2005.

We turn next to the $22,000 deposit. On August 15, 2005, petitioners withdrew $22,006 from their U.S. Bank account with account number ending 6737. On August 16, 2005, petitioners deposited $22,000 into that same account. Petitioners argue that the $22,000 deposit is not taxable to them because the deposit was made with funds that petitioners withdrew from the same account on August 15, 2005. In support of that argument, petitioners rely on Mr. Burley's testimony on which we are unwilling to rely. On the record before us, we find that petitioners have failed to carry their burden of establishing that the $22,000 deposit is not taxable to them for their taxable year 2005.

We turn finally to the $10,000 deposit. On October 24, 2005, petitioners (1) withdrew $10,000 from their U.S. Bank account with account number ending 6737 and (2) deposited $10,000 into their U.S. Bank account with account number ending 1622. Petitioners argue that the $10,000 deposit is not taxable to them because it represented a transfer of their funds from their U.S. Bank account with account number ending 6737 into their U.S. Bank account with account number ending 1622. In support of that argument, petitioners rely on Mr. Burley's testimony on which we are unwilling to rely. On the record before us, we find that petitioners have failed to carry their burden of establishing that the $10,000 deposit is not taxable to them for their taxable year 2005.

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of establishing that the deposits totaling $100,809.88 that remain at issue for their taxable year 2005 are not taxable to them for that year.

2006

We turn now to petitioners' argument that a total of $2,637.06 of deposits made on various dates during 2006 are not taxable to them for their taxable year 2006 because the bank deposits analysis is inherently flawed. We have rejected that argument.

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of establishing that the deposits totaling $2,637.06 that remain at issue for their taxable year 2006 are not taxable to them for that year.

2007

We turn finally to petitioners' argument that a total of $5,720.93 of deposits made on various dates during 2007 are not taxable to them for their taxable year 2007 because the bank deposits analysis is inherently flawed. We have rejected that argument.

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of

establishing that the deposits totaling $5,720.93 that remain at issue for their taxable year 2007 are not taxable to them for that year.

Claimed Schedule C Car and Truck Expense Deductions

We now address petitioners' position that, in addition to the respective amounts of Schedule C car and truck expense deductions that respondent conceded for 2005 and 2007, they are entitled to deduct $74,737 and $72,517.59 of Schedule C car and truck expenses for their taxable years 2005 and 2007, respectively.[8]

Section 162(a) generally allows a deduction for ordinary and necessary expenses paid during the taxable year in carrying on a trade or business. Deductions are a matter of legislative grace, and petitioners bear the burden of proving entitlement to any deduction claimed for each of the years at issue. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). The Code and the regulations thereunder required petitioners to maintain records sufficient to establish the amount of any deduction claimed for

---

[8]Before trial, petitioners conceded that they are not entitled to deduct any of the $141,381.95 of Schedule C car and truck expenses that respondent disallowed in the notice for their taxable year 2006. On brief, petitioners concede that they are not entitled to deduct Schedule C car and truck expenses of (1) $24,416.58 of the $157,444.48 of Schedule C car and truck expenses that respondent disallowed for their taxable year 2005 and (2) $15,767 of the $103,955.25 of Schedule C car and truck expenses that respondent disallowed for their taxable year 2007.

each of the years at issue.  See sec. 6001; sec. 1.6001-1(a),
Income Tax Regs.

In support of their position that they are entitled to
deduct the respective Schedule C car and truck expenses that they
are claiming for their taxable years 2005 and 2007, petitioners
rely on the respective testimonies of Mr. Burley, Ms. Burley, Mr.
Dennison, and Mr. Page.  We are unwilling to rely on those
testimonies.

In further support of their position that they are entitled
to deduct the respective Schedule C car and truck expenses that
they are claiming for their taxable years 2005 and 2007, peti-
tioners rely on certain documents (petitioners' documents) that
petitioners introduced into the record at trial, to which respon-
dent objected on the ground of authenticity.[9]  We find those
documents, which consist primarily of various purported invoices,
purported purchase orders, and purported receipts relating to
certain purchases that petitioners claim Burley Trucking made
during each of the years 2005 and 2007, to be inadequate to
establish petitioners' entitlement to the car and truck expense
deductions that they are claiming for each of their taxable years
2005 and 2007.

---

[9]We overruled respondent's objections and indicated that we
would give whatever weight that we consider appropriate to
petitioners' documents, to which respondent objected.

By way of illustration of the inadequacies of petitioners' documents, petitioners introduced, inter alia, 13 purported invoices in an effort to document certain purchases that they claim Burley Trucking made during 2005 from a business known as Brock Tire Resale.  Each of those purported invoices shows the quantity of the items allegedly purchased and the price of each item allegedly purchased.  Those purported invoices do not identify the nature of the item allegedly purchased.  In addition, none of those purported invoices shows the identity of the purported purchaser.  Although many of petitioners' documents contain a signature line for both the purchaser and the seller, those lines are blank on most of petitioners' purported invoices. Moreover, nowhere in petitioners' documents is there an indication that the amount shown as the purported purchase price was in fact paid by petitioners during their taxable year 2005 or their taxable year 2007.

We shall not rely on petitioners' documents to establish petitioners' position that they are entitled to deduct the respective Schedule C car and truck expenses that they are claiming for their taxable years 2005 and 2007.

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of establishing that they are entitled for their taxable years 2005

and 2007 to car and truck expense deductions under section 162(a) of $74,737 and $72,517.59, respectively.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.