T.C. Summary Opinion 2004-13


UNITED STATES TAX COURT


JAMES J. McCARRON III AND MICHELLE McCARRON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8383-00S.          Filed February 9, 2004.


James J. McCarron III, pro se.

<u>Richard A. Stone</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined deficiencies in petitioners' Federal income taxes, additions to tax for failure to file, and accuracy-related penalties as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|-----------|------------------|-----------|
| 1993 | $16,305 | $3,668.63 | $3,261.00 |
| 1994 | 13,875 | 3,492.30 | 2,775.00 |
| 1995 | 11,689 | -0- | 2,337.80 |

The issues for decision are:[1]  (1) Whether petitioners received unreported income during 1993, 1994, and 1995; (2) whether petitioners are entitled to deductions on Schedule A, Itemized Deductions, and deductions on Schedule C, Profit or Loss From Business, for 1993, 1994, and 1995 in excess of those allowed by respondent; (3) whether petitioners are entitled to earned income credits for 1993, 1994, and 1995; (4) whether petitioners are liable for additions to tax for 1993 and 1994 for failure to file timely returns; and (5) whether petitioners are liable for accuracy-related penalties for 1993, 1994, and 1995.

## Background

The stipulation of facts and the exhibits received into evidence are incorporated herein by reference.  Petitioners resided in Silver Spring, Maryland, at the time the petition was filed.

---

[1]The amounts of any liabilities for and deductions of self-employment taxes depend on the resolution of the other issues in this case.

At trial, respondent moved to dismiss the case as to petitioner Michelle McCarron for failure to prosecute. Mrs. McCarron did not sign the stipulation of facts or appear at the trial on her own behalf. The Court will grant respondent's motion to dismiss Mrs. McCarron for lack of prosecution. The Court will enter a decision in this case in an amount that will apply to both Mr. and Mrs. McCarron. See Estate of Mason v. Commissioner, 64 T.C. 651, 652 (1975), affd. 566 F.2d 2 (6th Cir. 1977).

Mr. McCarron was a tax return preparer and stockbroker during the years in issue. Mrs. McCarron did temporary work during 1993 through 1995 and was a horse riding instructor during 1995.

Petitioners failed to file timely their tax returns for 1990, 1991, and 1992. As a result, those tax years were selected for examination as part of the Nonfiler Initiative pertaining to tax return preparers.

The examination revealed petitioners had unreported income of $620 in 1990, $8,124 in 1991, and $10,073 in 1992. In those years petitioners also had unexplained bank deposits of $14,214, $7,988, and $9,676, respectively. The examination of the returns at issue here, for 1993, 1994, and 1995, commenced as a continuation of the earlier examination.

Petitioners filed delinquent income tax returns for 1993 and 1994. The 1993 return was filed on December 19, 1996, and the 1994 return was filed on June 10, 1996. Petitioners' 1995 return was timely filed. Attached to each return was a Schedule A and Schedules C. Petitioners reported adjusted gross income of $18,731, $16,756, and $17,353 for 1993, 1994, and 1995, respectively.

## A. Examination of Petitioners' Tax Returns

In a letter dated November 1, 1996,[2] petitioners were informed that respondent was proceeding with the examination of their 1993 tax year, for which a return had not yet been filed. Additionally, the examination had been expanded to include the Forms 1040, Individual Income Tax Return, they filed for 1994 and 1995. Forms 4564, Information Document Request (IDRs), were enclosed with the letter. Because of the audit results of petitioners' prior years, unreported income and the lack of substantiation of business deductions were significant areas of inquiry.

Mr. McCarron (petitioner) met with respondent on December 19, 1996, and presented an original delinquent return for 1993 for filing. Petitioner did not have any documentation used in

---

[2]Sec. 7491, which shifts the burden of proof to the Secretary in certain circumstances, is inapplicable to this case. See Warbelow's Air Ventures, Inc. v. Commissioner, 118 T.C. 579, 582 n.8 (2002) (sec. 7491 is effective for court proceedings arising in connection with examinations commencing after July 22, 1998), affd. 80 Fed. Appx. 16 (9th Cir. 2003).

calculating the income and deductions shown on the return or any of the information requested in the IDRs. Petitioners also failed to provide information for their 1994 or 1995 return.

Respondent issued a notice of deficiency for 1993, 1994, and 1995 in which various adjustments were made to petitioners' income and deductions and additions to tax and penalties were determined.

B. Petitioners' Income

Petitioners held bank accounts at Sandy Spring National Bank (Sandy Spring) during 1993 through 1995 and at John Hanson Savings Bank (John Hanson) during 1993 and 1994. Respondent conducted a bank deposits analysis to determine: (1) The amount of fees petitioner received in connection with his Schedule C business as a tax return preparer; (2) which checks petitioner received in connection with his Schedule C business activities as a stockbroker; and (3) the identity of other unexplained deposits.

Using the Internal Revenue Service's (IRS) Return Preparer Listing Information Database, respondent compiled a report of the individual income tax returns bearing petitioner's Social Security number and identifying him as the paid return preparer during the years in issue. The database revealed that petitioner prepared individual returns in each year as follows:

                    1993        143 returns
                    1994        139 returns
                    1995        236 returns

Petitioner gave respondent information indicating that he had prepared returns as follows:

                    1993        82 returns
                    1994        76 returns
                    1995        66 returns

Respondent compared the IRS database listing to the corresponding deposits of fees into petitioners' bank accounts and identified an additional 69 returns prepared by petitioner in 1995 alone. Ten of those returns were business returns which would not have appeared in the IRS database. For tax year 1995, at least 111 returns and their related preparation fees were not identified as having been deposited, in whole or in part.

Respondent determined petitioners had omitted gross receipts received from petitioner's Schedule C tax return preparation business of $10,885 for 1993, $12,247 for 1994, and $14,135 for 1995.

After reducing total unexplained bank deposits by unreported fees identified by respondent as well as income reported on Forms W-2, Wage and Tax Statement, and Forms 1099-MISC, Miscellaneous Income, respondent's analysis determined petitioners had remaining unexplained bank deposits as follows:

                    1993        $24,508
                    1994         26,300
                    1995         12,095

Petitioner failed to provide any documentation proving that these deposits were from nontaxable sources.

During 1993 and 1994, petitioner also worked for Mr. Ragnar Sundstrom preparing tax returns. Mr. Sundstrom filed Forms 1099-MISC for payments he made to petitioner for services rendered.

During 1993, petitioner received two additional checks from Mr. Sundstrom totaling $7,772.03: Check No. 4307 for $3,000 and check No. 4315 for $4,772.03 (the Sundstrom payments). The notation on check No. 4307 states "friendship". The notation on check No. 4315 states "Bal of friendship payment".

Petitioner contends the Sundstrom payments were loans, but he never gave respondent any evidence or documentation to support his claim. Further, petitioner did not take any action to produce Mr. Sundstrom to testify about the nature of the payments.

C. Petitioners' Deductions and Credits

Petitioners claimed itemized deductions as follows:

|  | 1993 | 1994 | 1995 |
|---|---|---|---|
| Real estate taxes | $1,715 | $1,687 | $1,734 |
| Home mortgage interest | 5,237 | 4,866 | 4,337 |
| Cash charitable contributions | 190 | 310 | 215 |
| Noncash charitable contributions | -0- | -0- | 500 |
| Total | 7,142 | 6,863 | 6,786 |

Respondent limited petitioners deductions for cash charitable contributions to those amounts evidenced by canceled checks as follows:

| 1993 | $75 |
|------|-----|
| 1994 | 10 |
| 1995 | 60 |

For the $500 noncash charitable contribution claimed on their 1995 return, petitioners submitted documentation consisting of a Salvation Army receipt for one refrigerator and four bags of clothes.  Petitioners attributed a value of $500 to the total contribution.  Respondent reduced the value of the contribution to $350:  $150 for the refrigerator and $50 for each bag of clothes.

The reduction of the charitable contribution deduction for 1995 reduced petitioners' total itemized deductions to $6,481. The standard deduction for joint filers in 1995 was $6,550. Respondent applied the higher amount of the standard deduction in calculating the tax due for 1995.

Additionally, petitioners claimed various deductions on their 1993, 1994, and 1995 Schedules C for their tax preparation, stock brokerage, and horse riding instruction activities. Respondent allowed deductions for the business expenses that were sufficiently documented by canceled checks.  Respondent disallowed many of the deductions, including a $287 deduction for self-employment health insurance, because petitioners failed to

substantiate them and failed to establish that the amounts were expended for a business purpose.

Petitioners knew respondent had questioned their documentation of expenses in prior years. Here, petitioners failed to respond to documentation requests via the IDRs and did not present any evidence at trial to demonstrate their entitlement to additional deductions on their returns.

For each of the years in issue, petitioners also claimed earned income credits for their two children of $602 in 1993; $1,506 in 1994; and $1,860 in 1995. Respondent determined petitioners were not eligible to claim these credits, and petitioners knew respondent had denied their claimed earned income credits in prior years.

D. Additions to Tax and Penalties

Respondent determined that petitioners are liable for additions to tax under section 6651(a)(1) for failure to file timely their tax returns for 1993 and 1994. For each of the years in issue, respondent also determined that petitioners are liable for an accuracy-related penalty under section 6662(a).

Discussion

Respondent's determinations in the notice of deficiency are presumed correct, and generally, petitioners bear the burden of proving that respondent's determination of income tax

deficiencies is incorrect. See <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

A. <u>Petitioners' Income</u>

It is a taxpayer's responsibility to maintain adequate books and records sufficient to establish his or her income. See sec. 6001; <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992). When a taxpayer fails to maintain adequate records, the Commissioner may determine income under the bank deposits method. <u>DiLeo v. Commissioner</u>, <u>supra</u> at 867.

A bank deposit is prima facie evidence of income. <u>Id.</u> at 868; <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986); <u>Estate of Mason v. Commissioner</u>, 64 T.C. at 656; see also <u>Haque Estate v. Commissioner</u>, 132 F.2d 775, 777-778 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941). The bank deposits method of reconstruction assumes that all money deposited into a taxpayer's account is taxable as income unless the taxpayer can show a nontaxable source for the income. See <u>Price v. United States</u>, 335 F.2d 671, 677 (5th Cir. 1964); <u>DiLeo v. Commissioner</u>, <u>supra</u> at 868. The use of the bank deposits method for computing income has long been sanctioned by the courts. <u>DiLeo v. Commissioner</u>, <u>supra</u> at 867; <u>Estate of Mason v. Commissioner</u>, <u>supra</u> at 656.

The fact that the Commissioner was not completely correct does not invalidate the method employed. <u>Marcello v. Commissioner</u>, 380 F.2d 494 (5th Cir. 1967), affg. in part and

revg. in part T.C. Memo. 1964-302; Halle v. Commissioner, 175 F.2d 500, 503 (2d Cir. 1949), affg. 7 T.C. 245 (1946).  Thus, petitioners, not respondent, bear the burden of proving that respondent's determination of underreported income, computed using the bank deposits method of reconstructing income, is incorrect.  Parks v. Commissioner, 94 T.C. 654, 658 (1990); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978).

Petitioner gave respondent incomplete information regarding his return preparation income and failed to deposit all the fees he received.  Petitioner also failed to call Mr. Sundstrom, a witness he claimed could corroborate that certain deposits were loan proceeds.  Given the importance of Mr. Sundstrom in substantiating this purported loan, the Court assumes from his absence that his testimony would not have corroborated petitioner's testimony.  Frierdich v. Commissioner, 925 F.2d 180, 185 (7th Cir. 1991), affg. T.C. Memo. 1989-393; see also Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946) (holding that if a party having the burden of proof fails to call a witness who is available to testify, and that witness could corroborate the taxpayer's testimony, the taxpayer's failure to do so creates a presumption that the witness's testimony would have been unfavorable), affd. 162 F.2d 513 (10th Cir. 1947).

The Court holds that respondent's determination of additional income in the amounts set forth in the notice of deficiency is sustained.

B.  Petitioners' Deductions

   1.  Schedule C and Schedule A Deductions

Section 162(a) allows a taxpayer deductions for ordinary and necessary business expenses incurred during the taxable year in carrying on a trade or business.  Deductions, however, are a matter of legislative grace, and the taxpayer bears the burden of proving the entitlement to any deductions claimed.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Rockwell v. Commissioner, 512 F.2d 882 (9th Cir. 1975), affg. T.C. Memo. 1972-133.

Generally, a taxpayer must establish that deductions taken pursuant to section 162 are ordinary and necessary business expenses and must maintain records sufficient to substantiate the amounts of the deductions claimed.  Sec. 1.6001-1(a), Income Tax Regs.  Under section 6001, petitioner bears the sole responsibility for maintaining his business records.

If a claimed business expense is deductible, but the taxpayer is unable to substantiate it, the Court is permitted to make as close an approximation as it can, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  The

estimate, however, must have a reasonable evidentiary basis.
Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).  With respect
to certain business expenses, section 274 supersedes the Cohan
doctrine.  See sec. 1.274-5T(a), Temporary Income Tax Regs., 50
Fed. Reg. 46014 (Nov. 6, 1985).

Applying more stringent substantiation requirements, section
274(d) disallows deductions for traveling expenses, gifts, and
meals and entertainment, as well as for "listed property", unless
the taxpayer substantiates by adequate records or by sufficient
evidence corroborating the taxpayer's own statement:  (1) The
amount of the expense; (2) the time and place of the expense; (3)
the business purpose of the expense; and (4) the business
relationship to the taxpayer of the persons involved in the
expense.

Petitioners' charitable contribution deductions are governed
by section 170.  Section 170(a) allows a deduction for any
charitable contribution to or for the use of an organization
described in section 170(c), payment of which is made during the
taxable year and verified under regulations prescribed by the
Secretary.  In general, the amount of a charitable contribution
made in property other than money is the fair market value of the
donated property at the time of the contribution.  Hewitt v.
Commissioner, 109 T.C. 258, 261 (1997), affd. without published

opinion 166 F.3d 332 (4th Cir. 1998); sec. 1.170A-1(c)(1), Income Tax Regs.

To be eligible for a charitable contribution deduction for property, petitioners must, among other requirements, establish the fair market value of the property at the time of the contribution and show the method they used to estimate the value. See Jennings v. Commissioner, T.C. Memo. 2000-366, affd. 19 Fed. Appx. 351 (6th Cir. 2001); sec. 1.170A-13(b)(2)(ii), Income Tax Regs. Petitioners attached a form provided by the Salvation Army upon which petitioners had written the amount of $500. They presented no detailed information regarding the property, its cost, or the manner in which the $500 amount claimed as a deduction was determined.

Respondent disallowed all or part of petitioners' Schedule C and Schedule A deductions, as well as their "above-the-line" deduction for self-employment health insurance, because of lack of substantiation. Petitioners did not keep books and records which would support an allowance of deductions in excess of the amounts respondent has already allowed, and they did not produce any documentary evidence at trial. The only available evidence as to any of petitioners' expenses in excess of those documented by canceled checks is petitioner's own self-serving testimony, which we are not required to accept, and which we do not, in

fact, find to be credible.  See Niedringhaus v. Commissioner, 99 T.C. 202, 219 (1992).

In view of their failure to substantiate, the Court holds that petitioners are not entitled to deductions in excess of the amounts allowed by respondent in the notice of deficiency. Respondent's determinations are sustained.

Since the remaining itemized deductions respondent allowed for tax year 1995 were less than the standard deduction for that year, respondent allowed petitioners the higher amount of the standard deduction.  See Wilkinson v. Commissioner, 71 T.C. 633, 635 (1979).  Respondent's determination is sustained.

2.  Earned Income Credit

Section 32(a)(1) allows an eligible individual an earned income credit against the individual's income tax liability. However, section 32(a)(2) limits the amount of credit allowable.

Section 32(a)(2) specifies the amounts of adjusted gross income at which the earned income credit is phased out and the taxpayer is no longer eligible for the credit.  In the case of an eligible individual with two qualifying children, the phaseout amounts are:  $12,200 for 1993, Rev. Proc. 92-102, 1992-2 C.B. 579; $11,000 for 1994, sec. 32(b)(2)(B); and $11,290 for 1995, Rev. Proc. 94-72, 1994-2 C.B. 811.

The Court has sustained respondent's determinations that petitioners had additional income in the amounts set forth in the

notice of deficiency. The result is that petitioners' adjusted gross income for 1993, 1994, and 1995 increased by $43,165, $38,547, and $26,230, respectively. These adjusted gross income amounts exceed the earned income credit phaseout amounts. The Court holds, therefore, that petitioners are not entitled to earned income credits for 1993, 1994, and 1995.

C. Additions to Tax and Penalties

1. Addition to Tax Under Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for failure to file a timely tax return. The addition to tax is equal to 5 percent of the amount of the tax required to be shown on the return if the failure to file is not for more than 1 month. Id. An additional 5 percent is imposed for each month or fraction thereof in which the failure to file continues, to a maximum of 25 percent of the tax. Id. The addition to tax is imposed on the net amount due. Sec. 6651(b).

The addition to tax is applicable unless a taxpayer establishes that the failure to file was due to reasonable cause and not willful neglect. Sec. 6651(a). If a taxpayer exercised ordinary business care and prudence and was nonetheless unable to file the return by the date prescribed by law, then reasonable cause exists. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. To prove reasonable cause, a taxpayer must show that he exercised ordinary business care and prudence but nevertheless could not

file the return when it was due.  See <u>Crocker v. Commissioner</u>, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  "Willful neglect" means a "conscious, intentional failure to file or reckless indifference."  <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985).

Petitioners failed to offer any evidence that their failure to timely file their 1993 and 1994 tax returns was due to reasonable cause and not willful neglect.  In fact, petitioners offered no explanation at all.  This is particularly troubling given that petitioner is a tax return preparer.  The Court sustains respondent's determination that petitioners are liable for the additions to tax under section 6651(a)(1).

2.  <u>Accuracy-Related Penalty Under Section 6662(a)</u>

Respondent also determined petitioners are liable for an accuracy-related penalty pursuant to section 6662(a) for each of the years in issue.  Section 6662(a) imposes a penalty of 20 percent of the portion of the underpayment which is attributable to, inter alia, negligence or disregard of rules or regulations. Sec. 6662(b)(1).  Negligence is the "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'"  <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985) (quoting <u>Marcello v. Commissioner</u>, 380 F.2d at 506). It includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Sec.

1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

No penalty shall be imposed if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c). The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. The most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of * * * the experience, knowledge and education of the taxpayer." Sec. 1.6664-4(b)(1), Income Tax Regs. (emphasis added); see Reynolds v. Commissioner, 618 296 F.3d 607, 618 (7th Cir. 2002), affg. T.C. Memo. 2000-20. This subjective analysis operates, in effect, to hold knowledgeable tax professionals to a higher standard of care than a regular taxpayer. See Reynolds v. Commissioner, supra at 618 ("experience, knowledge and education" proviso was fatal to taxpayer who was attorney, C.P.A., and IRS audit supervisor); Knoll v. Commissioner, T.C. Memo. 2003-277 (lawyer experienced in tax-advantaged financing liable for accuracy-related penalty for negotiating and structuring settlement agreement to secure tax advantages valid in form but

lacking substance); <u>Mitchell v. Commissioner</u>, T.C. Memo. 2001-269 (lawyer-accountant held liable for accuracy-related penalty for deducting farm losses with no credible plan to make profit); <u>Emerson v. Commissioner</u>, T.C. Memo. 2001-186 (lawyer liable for accuracy-related penalty for failing to keep adequate records required by section 6001).

Petitioner has been a tax return preparer since at least 1990. Between 1993 and 1995, he prepared at least 500 tax returns and was paid for his services. Given petitioner's experience in preparing tax returns and his knowledge that petitioners were previously held liable for omitting income and failing to substantiate expenses, this Court concludes that he failed to act with reasonable cause and in good faith in determining his tax liability. See <u>Wilkerson v. Commissioner</u>, T.C. Memo. 1998-68 (C.P.A. and wife, experienced return preparers who failed to report fees and other income, were held liable for negligence penalty). The Court holds that petitioners are liable for the accuracy-related penalties under section 6662(a).

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

An order of dismissal will be entered as to petitioner Michelle McCarron, and decision will be entered under Rule 155.